**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *IN RE: AVON ANTI-AGING SKINCARE CREAMS AND PRODUCTS MARKETING AND SALES PRACTICES LITIGATION* | Case No.:  1:13-cv-00150-JPO<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Jade Barrett, Joan Gerner, Lorena Trujillo, and Monique Quintana ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge:

<u>**SUMMARY OF THE ACTION**</u>

1.       This is a class action lawsuit against defendant Avon Products, Inc. ("Avon" or "Defendant") arising out of the sale of its  ANEW line of anti-aging skincare products, includingANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Day Cream, ANEW Reversalist Renewal Serum, ANEW Reversalist Illuminating Eye System (the "ANEW Reversalist Products"); ANEW Clinical Advanced Wrinkle Corrector, ANEW Clinical Luminosity Pro Brightening Serum, ANEW Clinical Resurfacing Expert Smoothing Fluid, ANEW Clinical Pro Line Eraser, ANEW Clinical Lift & Firm Pro Serum, ANEW Clinical Thermafirm Face Lifting Cream (the "ANEW Clinical Products"); ANEW Genics Night Treatment Cream, ANEW Genics Eye Treatment, and ANEW Genics Treatment Concentrate (the "ANEW Genics Products"); and ANEW Platinum Day Cream, ANEW Platinum Night Cream, ANEW Platinum Serum (the ANEW Platinum Products")(collectively, the "ANEW Products").

2.      Plaintiffs' claims concern the deceptive practices conducted by Defendant Avon Products, Inc. ("Defendant" or "Avon") in its marketing of the ANEW Products.  These practices violate the common law as well as the state laws of New York and California.

3.      Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers, both nationwide and in the States of New York and California, to prevent Avon from continuing to mislead consumers, and to obtain redress for those who have purchased Defendant's ANEW Products.

4.      As more fully alleged herein, Defendant's schemes or artifices to deceive Plaintiffs and other members of the proposed Class and Subclasses have consisted of systemic and continuing practices of disseminating false and misleading information *via* television commercials, Internet websites and postings, blast emails, radio, blogs, video news releases, advertisements, marketing materials, and the packaging of the ANEW Products, all of which is intended to induce unsuspecting consumers, including Plaintiffs and all other members of the proposed Class and Subclasses (as defined below), to purchase millions of dollars of the ANEW Products, which are manufactured, distributed, marketed, advertised, or sold by Defendant.

5.      Avon used  and continues to use aggressive marketing to mislead consumers into believing that the ANEW Products have "fountain of youth" properties.  Indeed, Avon preys upon consumers who fear the effects of aging.

6.      Avon designs its marketing and advertising campaign to include indicia of scientific research and promises of specific results for the sole purpose of misleading and deceiving consumers.   As a result, Avon's marketing pitch is the same as that of the quintessential snake-oil salesman – Avon dupes consumers with false and misleading promises of results it knows that it cannot deliver, and does so with one goal in mind – reaping enormous

profits.

7.      Indeed, the only reason a consumer would purchase the ANEW Products sold by Avon (instead of lower-priced moisturizers, which are readily available) is to obtain the unique results that Avon promises.

8.      A direct effect of this pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiffs and members of the proposed Class and Subclasses, were exposed to Avon's false and misleading misrepresentations in connection with their purchases of the ANEW Products, that in fact do not, and cannot, provide the results promised.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10.      This Court has personal jurisdiction over Defendant because Defendant is headquartered and conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with the State of New York.

11.      Venue lies within this judicial district under 28 U.S.C. § 1391, because Defendant conducts business in this Judicial District and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this Judicial District.

## PARTIES

12.      Plaintiff Jade Barrett is an individual and a citizen of New York.

13.      Plaintiff Joan Gerner is an individual and a citizen of New York.

14.     Plaintiff Lorena Trujillo is an individual and a citizen of California.

15.     Plaintiff Monique Quintana is an individual and a citizen of California.

16.     Defendant Avon, a citizen of New York, is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 777 Third Avenue, New York, New York 10017.

17.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## FACTUAL BACKGROUND

18.     Avon proclaims itself to be the world's leading direct seller of cosmetic products.

19.     Currently, there are approximately 76 million baby boomers in the United States. By 2030, the United States government projects that one in five people will be sixty-five or older.  One of the defining features of the baby boomer population is its desire to maintain a youthful appearance.  As a result, anti-aging and health related products and services are flooding the market.  A consumer base striving to keep signs of aging at bay will push the U.S. market for anti-aging from approximately $80 billion dollars today to more than $114 billion by 2015.

20.     Avon has aggressively sought to capitalize on this growing market.  To stay ahead of its competition, Avon has engaged in a widespread and pervasive scheme to deceive consumers about the efficacy of the ANEW Products.  Avon knows that consumers are willing to pay a premium for anti-aging products.  To capitalize on this, Avon advertises the ANEW

Products using affirmative misrepresentations of specific age-negating effects on its labeling, packaging, and marketing and advertising materials.   Avon also knows that reasonable consumers, including Plaintiffs, do not have the specialized knowledge necessary to identify the deceptive and misleading nature of Defendant's efficacy claims.

21.     Defendant's ANEW Products are exclusively available through limited authorized channels, namely, Avon's Independent Sales Representatives, who use Avon's catalogs, brochures, and other promotional materials, and Avon's website, www.avon.com, in the marketing and sale of the ANEW Products.   The ANEW Products are not sold in beauty parlors, salons, drug stores, department stores or other retail outlets, or *via* the Internet, other than exclusively through Avon's website.

22.     A central theme of Avon's deceptive marketing campaign, which permeates throughout its print and Internet-based advertisements, is that its ANEW Products and the results promised by Avon, are supported by scientific research and resulting innovations.   As described in more detail below, Avon's marketing campaign highlights the purported years of scientific research and study, clinical and consumer tests and other repeated references to scientific sounding terms that, according to Avon, prove the promised results.

23.     In fact, while such science-based claims provide Avon with an increased level of credibility among unsuspecting consumers, and therefore increased sales, the purported scientific research and discovery is simply part and parcel of Avon's false, misleading, and/or deceptive campaign.

24.     By way of example, Avon misleads consumers by claiming that many of its promised results for ANEW Products are supported by "in-vitro testing," which Avon knows sounds scientifically impressive to the average consumer.

25.     In fact, "in-vitro" is Latin for "in glass" and it means that the results are based on lab testing rather than "in vivo" testing on people.  In other words, "in-vitro" results are based on ingredient testing in a test tube or petri dish, which means that the ingredients' ability to penetrate actual human skin cannot be assessed.  Avon is well aware of this reality yet continues to convey to consumers that "in-vitro" results support its efficacy claims.

26.      One example of an ingredient found in the ANEW Products with great "in-vitro" results that does not translate to skin benefits is the family of peptides.  In "in-vitro" tests on cells, peptides have been shown to boost collagen production, reverse skin damage, lighten discoloration, and much more.  While Avon touts these "in-vitro" results in its marketing, it fails to disclose what it knows is the truth:   most peptide molecules are too large to penetrate the skin, which means they cannot possibly deliver the in-vitro results in real life.   And, even if the peptide is one that could possibly penetrate the skin, the degree of penetration and benefit to consumers is significantly less in actual use by consumers than the "in-vitro" test results purport to provide.  Avon is aware of this flaw in in-vitro testing, yet does not disclose it to consumers.  Accordingly, Avon's use of "in-vitro" tests as a marketing ploy is misleading to consumers.

27.     One of the reasons Avon saturates its marketing campaigns with misleading scientific references is to create the perception that ANEW Products have drug-like efficacy, when, in fact, they do not.  Avon knows, or should know, that such a perception will increase sales.

28.     Indeed, Avon's drug-like efficacy claims for its ANEW Products caught the attention of the federal Food and Drug Administration ("FDA").

29.     On October 5, 2012, the FDA  issued a warning letter (reference number 262337) to Avon that said, in part:

> [Y]our products Anew Clinical Advanced Wrinkle Corrector, Anew Reversalist Night Renewal Cream, Anew Reversalist Renewal Serum, Anew Clinical Thermafirm Face Lifting Cream, . . . appear to be intended for uses that cause these products to be drugs under section 201(g)(1)(C) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 321(g)(1)(C)]. The claims on your web site indicate that these products are intended to affect the structure or any function of the human body, rendering them drugs under the Act. The marketing of these products with claims evidencing these intended uses violates the Act.
>
> . . .
>
> Your products are not generally recognized among qualified experts as safe and effective for the above referenced uses and, therefore, the products are new drugs as defined in section 201(p) of the Act [21 U.S.C. § 321(p)]. Under section 505(a) of the Act [21 U.S.C. § 355(a)], a new drug may not be legally marketed in the U.S. without prior approval from FDA in the form of an approved New Drug Application (NDA).

30.     Avon spends millions of dollars misleading customers about the efficacy of its products by stating that the ANEW Products are superior to other comparable products because they can provide superior benefits that are supported by scientific discoveries and extensive research, tests, and studies.   Avon's claims are simply a sham.   In fact, as the FDA has recognized, if the ANEW Products could actually do what they claim, Avon would be required to submit a New Drug Application since its products would be new drugs.

31.     The ANEW Products are sub-branded into several collections, including "ANEW Reversalist," "ANEW Platinum," "ANEW Clinical," and "ANEW Genics," among others.   Avon has earned handsome profits by misleading the public with claims for these products such as:

> Anew Reversalist: "Reduce wrinkles with your skin's natural repair process. World's 1st with Activinol. Designed to boost Activin, helping to reactivate skin's repair process and **dramatically remove visible wrinkles**."  (emphasis in original).
>
> "Anew Platinum helps to restore cell shape and a youthful contour to the skin on the face and neck."

"ANEW Clinical features breakthrough targeted treatments that offer at-home answers to the costly, time consuming and often painful procedures found in a dermatologist's office.  These cutting edge products deliver quick, age transforming results at home and return skin to a more youthful state without a doctor's appointment."

"Anew Genics:   A breakthrough anti-aging miracle.   The inspiration for an Anti-Aging Revolution: Avon is 1st with YouthGen Technology – designed to stimulate the youth gene to help skin cells act younger.*  The Results are astounding: Anew Genics targets key age signs for skin that looks up to 10 years younger. ^  Dramatically reduces the appearance of discoloration and wrinkles while visible improving firmness.^"
*Based on in vitro testing.  ^ Based on a consumer perception study among women 45-59 years of age.

32.     Defendant asserts that its claims of superiority over lesser-priced wrinkle creams are based on, for example, purported scientific discoveries of unique formulas that penetrate deeply into skin and turn back the hands of time, by, among other things, "boosting collagen production," "recreat[ing] fresh skin," "restor[ing] cell shape" and "fortify[ing] damaged tissue."

33.     Avon claims that it has proven these "unprecedented discover[ies]" with such things as "in-vitro tests on 3D reconstructed skin," "exhaustive research, testing & review" and "clinical" studies.  Avon knew or should have known that its representations about the ANEW Products' abilities to provide the specific, promised results are false and misleading, and Avon purposely misrepresented and failed to disclose such deception to consumers.

34.     Avon has spent millions of dollars on a pervasive, deceptive, and misleading nationwide advertising campaign regarding the efficacy of the ANEW Products.  Avon's marketing, such as the advertisements pictured below, highlight the purported impact that the ANEW Products have on the genes and the composition of consumers' skin.

35.     One of the reasons Avon saturates its marketing campaigns with misleading scientific references is that it knows that such repeated and pervasive references to scientific

terms makes Avon's ANEW Product efficacy promises more credible in the eyes of the consumer. Indeed, Avon relies on promises of scientific reliability and proven results because it knows that consumers are more likely to believe its empty promises, and therefore be more likely to purchase its products, when the indicia of scientific credibility and study are present.

36.     Avon's specific claims of efficacy cannot be defended as mere puffery.  Avon's claims of specific results supported by so-called scientifically backed research and discoveries go beyond any mere sales puffery by claiming that certain scientific discoveries enable the ANEW Products to provide the unique benefits and by providing specific "proven" results affirmations and promises of those benefits.  Indeed, such specific scientific references are an integral part of Avon's marketing campaign for the ANEW Products, as evidenced by Avon's heavy use of such efficacy promises.  By promising specific results, Avon's advertising transcends the realm of mere puffery and becomes actionable as deceptive, misleading or fraudulent.

37.     In fact, Avon's specific efficacy claims even extend to claims of patents and Nobel prize winning research.  For example, Avon has touted the inclusion of a special patented molecule, the "A-F33 Molecule," in the ANEW Clinical Products to give the impression that these products provide better anti-aging results than even medical-grade ingredients (*i.e.*, retinol) or cosmetic procedures, such as injectable collagen.  Specifically, Avon represents that it discovered "[t]he Anti-aging Breakthrough of the Decade" and that unlike FDA-approved retinol,[1] A-F33 "turns off collagen blocking to turn up collagen production."  As a result, "deep wrinkles begin to fade" in one (1) week.[2]

---

[1] Retinol is part of a group of derivative compounds of the vitamin A family. Retin-A is the prescription form, and has been shown to reduce fine lines, smooth skin texture and help normalize pigmentation.  *See* http://www.huffingtonpost.com/2012/10/24/retinol-anti-aging-wrinkles_n_2002971.html (last accessed January 24, 2013).

[2] Available at http://shop.avon.com/shop/catalog/2012/23/en/p1.html?ba=null (last accessed January 17, 2013).

38.    Exemplars of Avon advertisements touting the "A-F33 Molecule" include:

A.



B.



C.



39.     Even if one or more of Avon's claims for its ANEW Products is literally true, when

viewed in their totality, the promises made by Avon regarding the efficacy of the ANEW Products

are nevertheless misleading to the average consumer and are therefore actionable regardless of

their literal truthfulness.

## Avon's False and Misleading Marketing of ANEW Products

40.     In each of the ANEW collections, Avon sells multiple products.  For example, in

the ANEW Genics collection, there are three products:  ANEW Genics Night Treatment Cream,

ANEW Genics Eye Treatment, and ANEW Genics Treatment Concentrate.   For the "Genics"

collection and indeed for all of the other ANEW collections, Avon markets and advertises each of

the products around a focused, specific thematic message that Avon wraps into all of its

marketing and advertising materials for that particular collection.  For example, the marketing

message for the ANEW Genics Products concentrates on gene research, in-vitro testing, the

development of a breakthrough, patented technology called "YouthGen," and efficacy promises

that ANEW Genics Products will "stimulate Youth Gene activity," "boost youth protein production," cause the skin cells to act younger, and help skin look up to ten years younger. Avon repeats this message in all of the marketing materials for its ANEW Genics Products. As a result, all purchasers of the ANEW Genics Products were exposed to the same false, misleading and/or deceptive marketing claims. The same holds true for the other ANEW collections.

### Avon's False and Misleading Representations
### Concerning Avon's ANEW Clinical Line

41.     ANEW Clinical Advanced Wrinkle Corrector sells for $32.00, ANEW Clinical Luminosity Pro Brightening Serum sells for $39.99, ANEW Clinical Resurfacing Expert Smoothing Fluid sells for $38.00, ANEW Clinical Pro Line Eraser sells for $39.00, ANEW Clinical Eye Lift Pro Dual Eye System sells for $30.00, ANEW Clinical Lift & Firm Pro Serum sells for $39.99, and ANEW Clinical Thermafirm Face Lifting sells for $32.00.

42.     Avon markets ANEW Clinical with claims that it "features breakthrough targeted treatments that offer at-home answers to the costly, time consuming and often painful procedures found in a dermatologist's office." Indeed, according to Avon, ANEW Clinical Products deliver "quick, age transforming results at home and return skin to a more youthful state without a doctor's appointment." Avon's overall marketing theme for ANEW Clinical Products is thus centered on promises that the products provide at-home answers or options to professional or cosmetic procedures. Moreover, Avon promises that the ANEW Clinical Products will "rebuild[] collagen in 48 hours," "stimulate elastin," "regenerate hydroproteins," and "rebuild, restructure and protect skin from the inside out."

A.



B.



43.     For the reasons discussed herein, Avon's efficacy claims for the ANEW Clinical

Products are false, misleading and deceptive because they do not and cannot provide the

promised results.   Accordingly, the efficacy claims are reasonably likely to, and do in fact,

deceive the consuming public.

**Avon's False and Misleading Representations**
**Concerning Avon's ANEW Reversalist Products**

44.     ANEW Reversalist Day Renewal Cream SPF 20 sells for $32.00, ANEW Reversalist Night Renewal Cream sells for $32.00, ANEW Reversalist Illuminating Eye System sells for $30.00, and ANEW Reversalist Renewal Serum sells for $34.99.

45.     Avon states that ANEW Reversalist Products are for "Women experiencing the moderate signs of aging, including wrinkles, loss of firmness and discolorations."  The marketing theme for Avon's ANEW Reversalist product line focuses on "**Activinol Technology** [which] helps reactivate skin's repair process to recreate fresh skin."  Among other things, Avon promises that "Activin" is the "key to skin repair," that it will lead to "wrinkle reversal," and that ANEW Reversalist products are "[d]esigned to BOOST ACTIVIN, ANEW'S ACTIVINOL technology helps reactivate skin's REPAIR process to recreate FRESH SKIN and helps DRAMATICALLY REVERSE VISIBLE WRINKLES."

46.      For example, such representations are depicted as follows in Avon's marketing materials:

**A KEY TO SKIN REPAIR: ACTIVIN**
Wrinkles are a result of MICRO-INJURIES to the skin, so Avon studied how skin HEALS. As part of the REPAIR process, the body produces ACTIVIN.

**5 GROUNDBREAKING YEARS IN DEVELOPMENT**
Exhaustive RESEARCH, testing and review have resulted in an unprecedented DISCOVERY by Avon scientists: how to ACTIVATE this key repair molecule.

**REACTIVATE, RECREATE & REVERSE**
Designed to BOOST ACTIVIN, ANEW's ACTIVINOL technology helps reactivate skin's REPAIR process to recreate FRESH SKIN and help DRAMATICALLY REVERSE VISIBLE WRINKLES.





Dr. Glen Anderson, Ph.D. Director of Global Skin Care Development Avon Products, Inc.

Dr. Uma Santhanam, Ph.D. Sr. Manager of Cell Biology and In-Vitro Testing Avon Products, Inc.



ACTIVIN being produced

Fresh, new skin being created

For illustrative purposes only. Not demonstrative of actual results.

"To optimize the effectiveness of the Activinol Technology, we teamed up and formulated the Renewal Serum and Night Renewal Cream to work in tandem. We have created a true power couple—the extremely lightweight serum and the moisturizing night cream—and when used together, the benefits of Reversalist are maximized."

47. Additionally, among other examples, Avon's marketing materials depict ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Serum, ANEW Reversalist Renewal Cream, and ANEW Reversalist Illuminating Eye System together as follows:

15



48.     For the reasons discussed herein, Avon's efficacy claims for the ANEW Reversalist Products are false, misleading and deceptive because the Reversalist Products do not and cannot provide the promised results.  Accordingly, the efficacy claims are reasonably likely to, and do in fact, deceive the consuming public.

**Avon's False and Misleading Representations**
**Concerning Avon's ANEW Genics Products**

49.     ANEW Genics Night Treatment Cream sells for $38.00, ANEW Genics Eye Treatment sells for $36.00, and ANEW Genics Treatment Concentrate sells for $39.99.

50.     Avon's ANEW Genics Products were launched in late 2011.  Avon touted the products as an "anti-aging miracle."  As discussed by way of example above, Avon's marketing message for the Genics collection concentrates on gene research, in-vitro testing, the development of a breakthrough, patented technology called "YouthGen," and efficacy promises

that the ANEW Genics Products "stimulate Youth Gene activity," "boost youth protein production" causing skin cells to act younger which, in turn, helps skin look up to ten years younger.

51.    To draw consumer attention to the product line, Avon told consumers "Some women never seem to age . . . Avon has discovered you have a youth gene, **too.**"



52.    According to Avon, ANEW Genics Products contain the patented "YouthGen Technology" which "can undo 5 years from the look of your skin" and make "any woman" appear 5 to 10 years younger.



53.     For the reasons expressed herein, Avon's efficacy claims and marketing messages for its ANEW Genics Products are false and misleading because the Genics Products do not and cannot provide the results promised.  Accordingly, the efficacy claims are reasonably likely to, and do in fact, deceive the consuming public.

<u>**Avon's False and Misleading Representations**</u>
<u>**Concerning Avon's ANEW Platinum Products**</u>

54.     ANEW Platinum Day Cream sells for $38.00, ANEW Platinum Night Cream sells for $38.00, ANEW Platinum Serum sells for $34.99 and ANEW Platinum Eye and Lip Cream sells for $ 36.00.

55.     Avon promises that the ANEW Platinum Products are based on a "breakthrough so advanced, it reshapes anti-aging science."  As discussed by way of example, Avon's marketing message for the ANEW Platinum Products focuses on the products ability to restore cell shape and reshape facial contours.  In fact, Avon promises that its "patent-pending technology is formulated to boost the production of Paxillin by 60%" which will "dramatically reshape skin for a more youthful looking profile" and "restore cell shape."

A.



B.



56.    Avon further promises that its ANEW Platinum Products will "help combat sagging neck" and "deep wrinkles" and the "jawline and neckline look more sculpted."

57.     Avon also markets the ANEW Platinum Products together.  Examples of this uniform marketing include the following:

A.



B.



58.     For the reasons expressed herein, Avon's efficacy claims and marketing messages for its ANEW Platinum Products are false and misleading because the Platinum Products do not and cannot provide the results promised.  Accordingly, the efficacy claims are reasonably likely to, and do in fact, deceive the consuming public.

**Avon's False and Misleading Representations**
**Regarding Clinical Testing and Scientific Research**

59.     Avon's product marketing strategy includes references to "clinical" studies or trials and "consumer perception studies" that purport to "prove" that the promised results are real.  The clear implication of these representations is that these are the results that typical users of the product can expect.   However, Avon knows, or reasonably should know, that the purported "proof" is not reliable and does not translate to actual results for consumers.  Despite this, Avon continues to convey its message of "proof" because it knows that average consumers

are swayed by such indicia of credibility and Avon takes full advantage of this to profit on consumers' gullibility.

60.     By way of example, Avon misleads consumers by claiming that many of its promised results are supported by "clinical tests" or "consumer-perception studies" which Avon knows sound scientifically reliable to the average consumer, but which are, in fact, not representative of results consumers will achieve.

61.      In fact, Avon designs such "tests" to support the promised results knowing that the results are not reliable and do not translate to the results consumers actually receive. Evidence of this practice is reflected in Avon's use of "consumer-perception" studies to support its efficacy claims for its ANEW Products.  For example, for its ANEW Clinical Thermafirm Face Lifting Cream, Avon touts that "Our effective lifting treating is formulated to fortify damaged tissue with new collagen.  In just 3 days, see tighter, firmer, more lifted skin.*"  The claim, however, is based upon nothing more than an empty, self-serving "consumer-perception study" which offers no details or support of any kind for the claim that the product will "fortify damaged tissue with new collagen."

62.     In addition to the foregoing claim, Avon contends that after 4 weeks of use of ANEW Clinical Thermafirm Face Lifting Cream, "87% of women felt a more youthful facial definition and shape was restored; and 77% of women felt their jawline and neck were sculpted." These results are similarly "[b]ased on women who expressed an opinion in a consumer-perception study."  The use of statistics in this manner without supporting quantitative detail is misleading.  Avon does not disclose how many women participated in the consumer-perception study, how many expressed an opinion and how many did not, or how many expressed a favorable opinion, or even what constitutes a favorable opinion.

63.     In sum, the results reported by Avon to support its efficacy claims are deceptive because these are ***not*** the results that consumers will actually achieve by use of the ANEW Products.  Such misleading use of studies is also contrary to the Federal Trade Commission's guidelines on use of consumer testimonials, which provides that representations concerning testimonials in advertising must reflect the typical results consumers can expect and if advertisers choose to include results that are not typical of an ordinary consumer's experience with a product, they must conspicuously disclose the results an ordinary consumer can expect to achieve.[3]

64.     Upon information and belief, flaws in Avon's studies and consumer perception tests include, but are not limited to (1) studies with too few participants to yield results that are scientifically or statistically significant such that Avon could reasonably believe that the results would translate to consumers, and (2) tests where participants are cherry picked and/or where results are selectively determined such that Avon is able to manipulate the results to support the purported benefits of the ANEW Products for use in its advertising materials.

65.     Moreover, even when Avon does disclose information about consumer perception studies, Avon does so in a misleading manner.  Specifically, Avon misleads consumers by its use of asterisks in combination with the design of its website that actually hides the text and the true meaning of the asterisks.  For example, as the screenshots below indicate, Avon claims that the ANEW Clinical Thermafirm Face Lifting Cream is "formulated to fortify damaged tissue with new collagen.  In just 3 days, see tighter, firmer, more lifted skin.* . . . Read More."  The information pertaining to the asterisks – that the claimed benefit is based on mere consumer

---

[3] FTC has made clear that consumer testimonials in advertising "are not competent and reliable scientific evidence" and that testimonials concerning key attributes of a product must be "representative of what consumers will generally achieve with the advertised product…in actual, albeit variable, conditions of use."  16 CFR § 255.2.

perception – is hidden from view.  Unless the consumer clicks the "Read More" link, she would not know that the result is supported by nothing more than subjective opinion.



66.     By hiding the fact that such claims of miraculous results ("fortify damaged tissue with new collagen.  In just 3 days, see tighter, firmer, more lifted skin") are based upon nothing more than ambiguous and misleading subjective consumer perceptions, Avon deceives consumers into thinking that the results are better (and more believable) than they actually are.

67.     Avon makes similar claims for its ANEW Reversalist Renewal Serum: "75% of people felt like they had new skin overnight.* In **2 weeks**, skin looks & feels dramatically tighter.* 60% improvement in discolorations.** **Over time**, 88% of people agreed, skin looks dramatically younger.***…. Read More."  Here again, the information pertaining to the

multiple sets of asterisks is hidden from view.  Unless the consumer clicks the "Read More" link, she would not know that the claimed results are supported merely by consumer perception and subjective opinion.

68.     Avon intentionally obscures the consumer perception information throughout its advertising for the ANEW Products because Avon knows that the results are not likely to be representative, and yet Avon presents the statistical information in a misleading way so that the average consumer would expect similar results.

## Use of Celebrity Spokespeople

69.     Avon makes further use of print, television and internet advertising, wherein Avon touts the benefits of its skin-care products using celebrity spokespersons who claim to exemplify the results of the products.

70.     What Avon fails to disclose is that the images of the celebrities are airbrushed, digitized, embellished, "Photo-shopped" or otherwise altered and, therefore, contrary to the claims made by Avon, cannot and do not illustrate the effectiveness of its products.  In sum, the images used by Avon to sell its ANEW Products have nothing to do with the effectiveness of the products themselves.

71.     The use of Photoshop to alter the perception of consumers has been criticized.  In fact, the National Advertising Division of the Council of Better Business Bureaus ("NAD") recently called for a ban on the Photo-shopping of cosmetic advertisements.  The NAD has noted that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

72.     Despite these warnings, and the increased scrutiny regarding the use of photo-shopped images in the marketing of skin care products, upon information and belief, Avon continues to use altered images in its cosmetic advertising, including the highly embellished

image of model Paulina Porizkova from Avon's brochure in the photo on the left, as compared to the second photo of her at a public appearance on the right.

 

73.    Indeed, upon information and belief, Avon's use of Photoshop is pervasive throughout its marketing and advertising, as further evidenced by comparing these images of Jacqueline Bisset, the spokesperson for the ANEW Platinum Collection:



  



74.    Such deceptive use of celebrity spokespersons further illustrates the lengths to which Avon will go to deceive consumers.

**The Results of Avon's Deceptive Conduct**

75.     Ignoring the inability of the ANEW Products to provide the promised results, Avon's pervasive false and misleading marketing campaign leaves consumers with the impression that its products are uniquely able to provide certain permanent age-negating effects on human skin.

76.     Avon compounds this deception by maintaining that the products and the promised results are based on years of research and scientific study and unique ingredients.

77.     Avon hammers this point home with its repeated references to research, labs, and claims of scientific breakthroughs, among other things, as a way to bolster the credibility of the products in the eyes of the consumer and to bolster its own profits.  In fact, these claims are merely part and parcel of Defendant's false and misleading advertising program for its ANEW Products.

78.     In addition to the material misrepresentations as described herein, Defendant's actions are likewise actionable based on their material omissions, which similarly induced Plaintiffs and the Class and Subclasses to purchase the ANEW Products.  For example, Defendant has failed to disclose the following:

- That the referenced clinical or consumer tests were designed to be used in Avon's marketing efforts;

- That the "in-vitro" tests relied on by Avon cannot translate to actual results in humans;

- That none of the ANEW Products provide unique benefits that cannot be found in other, less expensive products.

79.     Avon is in a position to actually know, or should know, that the promised results

are not possible, *i.e.* its skin-care products cannot "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein.  Avon fails to disclose that its products do not perform as promised.

80.     As long as Avon continues to engage in deceptive and misleading advertising of the Anew Products, Plaintiffs and the other members of the Class and Subclasses will continue to be harmed.

81.     Avon's claims of efficacy based on scientific innovation are a material and important factor in its marketing campaign because Avon knows that consumers pay special attention to product claims that are science-oriented.  Avon further knows that consumers can be duped into paying a higher price for products that purport to provide clinically proven skin-correcting and age-negating benefits.

82.     Avon also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater profits.

83.     Indeed, it is for these precise reasons – increased sales and profits – that Avon intentionally engages in its deceptive marketing and advertising campaign.

84.     Avon has succeeded in its deceit and has in fact enjoyed massive profits from its deceptive campaigns. Such enormous profits would not have occurred but for Avon's deceptive

and misleading marketing and advertising campaign.

85.     Avon charges a premium for its products.  Plaintiffs and the other members of the Class and Subclasses would not have paid premium Avon prices for the ANEW Products had they known the truth regarding the deceptive marketing promises.

86.     Moreover, Plaintiffs and the other members of the Class and Subclasses believed they were purchasing Avon products that would provide the promised age-negating benefits as detailed herein.  In reality, although Plaintiffs and the other members of the Class and Subclasses paid for these unique ANEW Product benefits, they did not get what they paid for.  Instead, the products Plaintiffs and the other members of the Class and Subclasses purchased did not provide the promised age-negating results.

87.     As a result and because of Avon's deceptive marketing, Plaintiffs and the other members of the Class and Subclasses have been harmed in their purchases of the ANEW Products.

### Avon's Deceptive Practices Result in Unfair Profits

88.     As a result of the foregoing, Defendant's claims regarding ANEW Products are deceptive and misleading.  Had Plaintiffs and the other members of the proposed Class and Subclasses been aware of the truth about Defendant's ANEW Products, they would not have purchased the ANEW Products, or would not have paid a premium price for the ANEW Products.

89.     Indeed, Defendant was in a superior position to know, and did know, that its claims and advertisements were deceptive and false and they failed to inform consumers that its ANEW Products cannot perform as advertised and as promised.

90.     Instead, Avon allows its deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate its false claims and promises.  Ultimately,

Avon takes advantage of every marketing avenue of the modern age, as well as relying on tried and true traditional methods, in order to ensure that its false and deceptive marketing message permeates the general consumer consciousness.  Avon uses television advertising, Internet marketing, and social media, as well as celebrity endorsements, "Avon's Independent Sales Representatives," and glossy print brochures.  But, no matter which marketing avenue reaches a consumer, Avon drives home the same false and deceptive efficacy claims.

91.     Because of such deceptive practices and conduct, Defendant is able to charge and get a substantial premium for its products over readily available and much lower priced cosmetic creams and serums that likely share substantially similar ingredients and provide similar results. Thus, Avon reaps profits on products where consumers are induced to pay an unwarranted, substantial premium.

92.     Without knowing the truth as to the efficacy of the ANEW Products, Plaintiffs and the other members of the Class and Subclasses paid a price premium for the ANEW Products and/or received totally worthless products.

**Plaintiffs' Claims Against Avon**

**Plaintiff Jade Barrett**

93.     Plaintiff Jade Barrett is a citizen of New York.

94.     Plaintiff Barrett purchased ANEW Reversalist Renewal Serum from an Avon representative in New York during the Class period at full retail price for personal use.

95.     In or about December 2011, Plaintiff Barrett saw, read, and received Avon's material misrepresentations, including Avon's many false and misleading product claims in its sales brochures and other marketing materials, as described above, prior to her decision to purchase ANEW Reversalist Renewal Serum.

96.     In particular, Plaintiff Barrett was exposed to Avon's statements that ANEW

Reversalist Renewal Serum was "[d]esigned to boost Activin. ANEW's Activinol technology helps reactivate skin's repair process to recreate fresh skin and help dramatically reverse visible wrinkles."   Moreover, Plaintiff Barrett was exposed to statements by Avon that ANEW Reversalist Renewal Serum would make her skin look and feel dramatically tighter and that the product's efficacy promises were based on scientific research, testing, and discovery.

97.   These false and misleading statements received by Plaintiff Barrett during the Class Period were material and influenced her decision to purchase Avon ANEW Reversalist Renewal Serum.

98.   Plaintiff Barrett would not have purchased ANEW Reversalist Renewal Serum had Avon not made such false and deceptive claims and instead disclosed the true nature of its products.

99.   Plaintiff Barrett was denied the benefit of the bargain when she decided to purchase Avon's ANEW Reversalist Renewal Serum, because she paid for a product that would "reactivate [her] skin's repair process to recreate fresh skin," but she instead received a product that did not, and could not, provide the benefits it promised to provide.   Accordingly, Plaintiff Barrett suffered injury in fact and lost money as a result of Avon's false and misleading representations.

100.   Despite consistent use, Plaintiff Barrett did not experience any of the promised results from Avon's ANEW Reversalist Renewal Serum.

**Plaintiff Joan Gerner**

101.   Plaintiff Joan Gerner is a citizen of New York.

102.   Within the Class Period, Plaintiff Gerner purchased several of Avon's ANEW Products, including ANEW Clinical Thermafirm Face Lifting Cream for approximately $32.00, ANEW Platinum Day Cream for approximately $38.00, ANEW Platinum Night Cream for

approximately $38.00, and ANEW Platinum Serum for approximately $34.99 from an Avon sales representative in New York for her personal use after being exposed to Avon's representations in various advertisements for the products and on the product labels.

103.    Within the Class Period, Plaintiff Gerner saw, read, and received Avon's material misrepresentations, including Avon's many false and misleading product claims in its sales brochures and other marketing materials, as described above, prior to making her decision to purchase Avon's ANEW Products, including ANEW Clinical Thermafirm Face Lifting Cream, ANEW Platinum Day Cream, ANEW Platinum Night Cream, and ANEW Platinum Serum.

104.    In particular, Plaintiff Gerner was exposed to Avon's statements that ANEW Clinical Thermafirm Face Lifting Cream "is formulated to fortify damaged tissue with new collage," and would provide tighter, firmer, more lifted skin "in just 3 days." Plaintiff Gerner was also exposed to statements by Avon that ANEW Platinum Day Cream would "reshape the appearance of the neck," and "dramatically reduce[] the look of deep wrinkles." Plaintiff Gerner saw statements by Avon that ANEW Platinum Night Cream would "dramatically reduce[] the look of sagging skin," and "reduce[] the look of deep verticle lines," and "dramatically reshape[] skin." Plaintiff Gerner also saw statements by Avon that ANEW Platinum Serum would "boost the production of Paxillin by 60%," and "restore cell shape," and increase skin softness by over 40%," and that the products' efficacy promises were based on scientific research, testing, and discovery.

105.    These false and misleading statements received by Plaintiff Gerner during the Class Period were material and influenced her decision to purchase the Avon ANEW Products.

106.    Plaintiff Gerner would not have purchased the ANEW Products had she known that they were not effective, and had Avon not made such false and deceptive claims and instead

disclosed the true nature of its products.

107.    Plaintiff Gerner was denied the benefit of the bargain when she was induced to purchase Avon's ANEW Products, because she paid for products that would provide the advertised benefits and results, but she received products that did not, and could not, provide the benefits Avon promised they would provide.  Accordingly, Plaintiff Gerner suffered injury in fact and lost money as a result of Avon's false and misleading representations.

108.    Plaintiff Gerner used the foregoing ANEW Products as directed but did not experience any reduced lines or wrinkles, firmer, tighter or lifted skin, reshaped skin, or any other of the claimed anti-aging results.

**Plaintiff Lorena Trujillo**

109.    Plaintiff Trujillo is a resident of Torrance, California, in Los Angeles County, California.

110.    Plaintiff Trujillo purchased Avon's ANEW Reversalist Night Renewal Cream during the past two years for personal use.

111.    In deciding to purchase Avon's ANEW Reversalist Night Renewal Cream, Plaintiff Trujillo saw and relied on the statements on Avon's website, believing Avon's claims, as discussed above, including that Avon's "exhaustive research, testing & review has resulted in an unprecedented discovery by AVON scientists," and she believed that if she used Avon's ANEW Reversalist Night Renewal Cream, it would "boost Activin, . . . reactivate [her] skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles."   These representations were material to Plaintiff Trujillo.

112.    Plaintiff Trujillo was denied the benefit of the bargain when she decided to purchase Avon's ANEW Reversalist Night Renewal Cream over competitor products, because she paid for a product that would "reactivate [her] skin's repair process to recreate fresh skin," but

she received a product that did not, and could not, provide the benefits it promised to provide. Accordingly, Plaintiff Trujillo suffered injury in fact and lost money as a result of Avon's false and misleading representations.

113.   Had Avon disclosed to Plaintiff Trujillo and members of the Class the truth about the Products, they would have seen and been aware of the disclosure.   But for Avon's misrepresentations, Plaintiff Trujillo and members of the Class would not have purchased and consumed the ANEW Products.  Instead, had they known the truth, Plaintiff Trujillo and members of the Class would not have purchased the ANEW Products at all.

**Plaintiff Monique Quintana**

114.   Plaintiff Quintana is a resident of San Ysidro, California, in San Diego County, California.

115.   Plaintiff Quintana purchased Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum during the past two years, for personal use.

116.   Plaintiff Quintana's purchases of Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum were made in reliance on Avon's representations and omissions, as discussed above, regarding the products' anti-aging effects.   These representations and omissions were material to Plaintiff Quintana's decision to purchase the products.

117.   For example, Plaintiff Quintana was exposed to Avon's claims that the ANEW Reversalist Products were "[d]esigned to boost Activin" that "ANEW's Activinol technology helps reactivate skin's repair process to recreate fresh skin and help dramatically reverse visible wrinkles, "  and that the product's efficacy promises were based on scientific research, testing, and discovery. Moreover, Plaintiff Quintana was exposed to Avon's claims that  ANEW Clinical

Advanced Wrinkle Corrector would improve her deep wrinkles.

118.   Had Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum been accurately and appropriately labeled and marketed, Plaintiff Quintana would not have bought them.

119.   As a result of Avon's misrepresentations and failure to disclose the true nature of its ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum products, Avon improperly deprived Plaintiff Quintana of significant funds and denied her the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

120.   Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs are informed and believe and on that basis, allege that Defendant has sold tens of thousands of units of the ANEW Products, if not more, in New York, California and throughout the United States.  Plaintiffs are informed and believe and on that basis, allege that the advertising and representations on the packaging for the ANEW Products has been uniform throughout the class period.

121.   The groups of similarly situated individuals Plaintiffs seek to represent are defined as follows:

>All residents of the United States of America who purchased Avon's Avon's ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Day Cream, ANEW Reversalist Renewal Serum, ANEW Reversalist Illuminating Eye System (the "ANEW Reversalist Products"), ANEW Clinical Advanced Wrinkle Corrector, ANEW Clinical Luminosity Pro Brightening Serum, ANEW Clinical Resurfacing Expert Smoothing Fluid, ANEW Clinical Pro Line Eraser, ANEW Clinical Lift & Firm Pro Serum, ANEW Clinical Thermafirm Face Lifting Cream (the "ANEW Clinical Products"), and ANEW Genics Night Treatment Cream, ANEW Genics Eye Treatment, and ANEW Genics Treatment

Concentrate (the "ANEW Genics Products"); and Anew Platinum Day Cream, Anew Platinum Night Cream, Anew Platinum Serum (the ANEW Platinum Products") (collectively, the "ANEW Products") during the period of October 23, 2008, continuing through the date of final disposition of this action (the "Class").

122.    Plaintiffs Barrett and Gerner also seek to represent a subclass defined as all members of the Class who purchased ANEW Products (as defined herein) in the State of New York (the "New York Subclass").

123.    Plaintiffs Trujillo and Quintana seek to represent a subclass defined as all members of the Class who purchased ANEW Products (as defined herein) in the State of California (the "California Subclass").

124.    Excluded from the Class and Subclasses are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

125.    Plaintiffs reserve the right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Class and Subclasses should be expanded or otherwise modified.

126.    Plaintiffs reserve the right to establish additional subclasses as appropriate.

127.    This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.

128.    Numerosity:  While the exact number of members of the Class and respective Subclasses is unknown to Plaintiffs at this time and can only be determined by appropriate

discovery, membership in the Class is ascertainable based upon the records maintained by Defendant. At this time, Plaintiffs are informed and believe that the Class and the New York and California Subclasses includes thousands of members. Therefore, the Class and the New York and California Subclasses are sufficiently numerous that joinder of all members of the Class and/or respective Subclasses in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

129.     Commonality:  Common questions of law and fact exist as to the members of the Class and the New York and California Subclasses, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class and respective Subclasses within the meaning of Federal Rule of Civil Procedure 23(b)(3).

130.     The common questions of fact include, but are not limited to, the following:

    a.       whether Defendant was unjustly enriched by its conduct;

    b.       whether Defendant breached an express warranty made to Plaintiffs and the Class and Subclasses;

    c.       whether Defendant advertises or markets the ANEW Products in a way that is false or misleading;

    d.       whether Defendant concealed from Plaintiffs and the members of the Class and Subclasses that its ANEW Products do not provide the promised results;

    e.       whether, by the misconduct set forth in this Consolidated Complaint, Defendant has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of its ANEW Products;

    f.       whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the members of the Class and Subclasses are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

131.     Ascertainability:  Names and addresses of members of the Class and/or the New

York and California Subclasses are available from Defendant's records.  Notice can be provided

to the members of the Class and/or the New York and California Subclass members through

direct mailing, publication, or otherwise using techniques and a form of notice similar to those

customarily used in consumer class actions arising under New York and California state law and

federal law.

132.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the

Class and Subclasses which they seek to represent under Federal Rule of Civil Procedure

23(a)(3) because Plaintiffs and each member of the Class and Subclasses have been subjected to

the same deceptive and improper practices and have been damaged in the same manner thereby.

133.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately represent and protect the interests

of the Class and Subclasses as required by Federal Rule of Civil Procedure Rule 23(a)(4).

Plaintiffs are adequate representatives of the Class and Subclasses, because they have no

interests which are adverse to the interests of the members of the Class or Subclasses.  Plaintiffs

are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained

counsel who are competent and experienced in handling class action litigation on behalf of

consumers.

134.   <u>Rule 23(b)</u>:  Additionally, this action is certifiable under the provisions of Federal

Rule(s) of Civil Procedure 23(b)(2) and/or 23(b)(3) because:

> a.   The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and Subclasses which would establish incompatible standards of conduct for Defendant;
>
> b.   The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class and Subclasses not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

      c.     Defendant has acted or refused to act on grounds generally applicable to all of the members of the Class and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclasses as a whole and necessitating that any such relief be extended to members of the Class and the New York and California Subclasses on a mandatory, class-wide basis; or

      d.     As alleged above, common questions of law or fact predominate over any questions affecting only individual members of the Class or Subclasses.

135.   <u>Superiority</u>:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

      a.     The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action;

      b.     If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

      c.     Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

136.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violation of Section 349 of the New York General Business Law)**

137.   Plaintiffs Barrett and Gerner repeat the allegations contained in the above paragraphs as if fully set forth herein.

138.   Plaintiffs Barrett and Gerner bring this cause of action individually and on behalf of the New York Subclass.

139.   Defendant misrepresented that ANEW Products can, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support

layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein.

140.     Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

141.     Defendant's misrepresentations and omissions constitute an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or the knowing concealment, suppression, or omissions in connection with  the sale or advertisement of merchandise, in violation of § 349 of New York's General Business Law, which makes deceptive acts and practices illegal.

142.     Plaintiffs and the other members of the New York Subclass suffered an ascertainable loss directly, foreseeably and proximately caused by Avon's misrepresentations and/or omissions because they were induced to purchase or paid a price premium due to the advertising, marketing, packaging, labeling and other promotion of Anew Products.  Because of Defendant's misrepresentations and omissions, Plaintiffs and the other members of the New York Subclass did not receive the products they thought they were paying for.

## <u>SECOND CAUSE OF ACTION</u>
**(Violation of Section 350 of the New York General Business Law)**

143.     Plaintiffs Barrett and Gerner repeat the allegations contained in the above paragraphs as if fully set forth herein.

144.     Plaintiffs Barrett and Gerner bring this cause of action individually and on behalf

of the other members of the New York Subclass.

145.   Defendant materially misled consumers through the specific promises that, among other things, ANEW Products "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein.

146.   Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

147.   Defendant's misleading actions are consumer-oriented conduct and constitute false advertising in violation of § 350 of New York's General Business Law, which makes false advertising illegal.

148.   Plaintiffs and the other members of the New York Subclass suffered injury as a result of Avon's false advertising because they were induced to purchase or paid a price premium due to the misleading advertising, marketing, packaging, labeling and other promotion of ANEW Products.  Because of Defendant's false advertising, Plaintiffs and the other members of the New York Subclass did not receive the products they thought they were paying for.

### THIRD CAUSE OF ACTION
**(Violation of the California Consumers Legal Remedies Act**
**Cal. Civil Code §§ 1750 *et seq.*)**

149.   Plaintiffs Trujillo and Quintana repeat the allegations contained in paragraphs 1-136 as if fully set forth herein.

150. Plaintiffs Trujillo and Quintana bring this cause of action on behalf of themselves and the other members of the California Subclass.

151. This cause of action is brought under the California Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"). Plaintiffs and the other members of the California Subclass are consumers as defined by California Civil Code section 1761(d). The ANEW Products are goods within the meaning of California Civil Code section 1761(a).

152. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiffs and the other members of the California Subclass, which were intended to result in, and did result in, the sale of the ANEW Products:

> (5)    Representing that [the ANEW Products have]… characteristics…[and] uses…which they do not have….

> (7)    Representing that [the ANEW Products] are of a particular standard…if they are of another.

> (9)    Advertising goods…with intent not to sell them as advertised.

153. Defendant violated the CLRA by misrepresenting and advertising the ANEW Products, as discussed above. However, Defendant knew, or should have known, that these representations were false and misleading.

154. In order to conceal the fact that Avon's efficacy claims, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as

described herein are untrue,   Defendant labels the ANEW Products with phrases such as "clinical," "focused," and "target[ing] specific concerns," and other representations discussed above.

155.   On October 22, 2012, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff Trujillo's counsel notified Avon in writing of the particular violations of Section 1770, and demanded that it rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Civil Code section 1770.

156.   On November 14, 2012, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff Quintana's counsel notified Avon in writing of the particular violations of Section 1770, and demanded that it rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Civil Code section 1770.

157.   Avon failed to respond to Plaintiffs' demands, nor did it give notice to all affected consumers under Section 1782.  Therefore, under Section 1780(a) of the CLRA, Plaintiffs and the other members of the California Subclass seek actual and punitive damages.

158.   Plaintiff Trujillo filed a Declaration of Venue in accordance with Civil Code section 1780(d).

159.   Under Section 1782(d) of the CLRA, Plaintiffs seek an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

160.   Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase

the sale of the ANEW Products.

161.   Defendant's misrepresentations and omissions were material to Plaintiffs and the other members of the California Subclass.  Plaintiffs and the other members of the California Subclass would not have purchased and consumed the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and the other members of the California Subclass were damaged as a result of Defendant's material misrepresentations and omissions.

**FOURTH CAUSE OF ACTION**
**(Violation of the California Unfair Business Practices Act**
**California Business & Professions Code §§ 17200 *et seq*.)**

162.   Plaintiffs Trujillo and Quintana repeat the allegations contained in paragraphs 1-136  and 149-161 as if fully set forth herein.

163.   Plaintiffs Trujillo and Quintana bring this cause of action on behalf of themselves and the other members of the California Subclass.

164.   California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code section 17200.

165.   Defendant's misrepresentations and omissions of material facts, as set forth herein, constitute an unlawful practice because they violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, and the common law.

166.   Defendant's misrepresentations and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq*., in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiffs also assert

a violation of public policy by withholding material facts from consumers.  Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

167.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

168.    California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."

169.    Defendant's misrepresentations and concealment of material facts, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code section 17200.

170.    Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiffs and the other members of the California Subclass to purchase the ANEW Products.  Plaintiffs and the other members of the California Subclass saw and justifiably relied on Defendant's misrepresentations when purchasing the ANEW Products.

171.    Defendant's conduct caused and continues to cause injury to Plaintiffs and the other members of the California Subclass.  Defendant's misrepresentations and omissions were material to Plaintiffs and the other members of the California Subclass.  Plaintiffs and the other members of the California Subclass would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and the other members of the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

172.    Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and they were material to Plaintiffs.  Reliance upon the

misrepresentations and omissions discussed herein may therefore be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the other members of the California Subclass' injuries.

173.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and the other members of the California Subclass to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

174.    Additionally, under Business and Professions Code section 17203, Plaintiffs and the other members of the California Subclass seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its actions.

<u>**FIFTH CAUSE OF ACTION**</u>
**(Violation of the California False Advertising Law**
**California Business & Professions Code §§ 17500 *et seq*.)**

175.    Plaintiffs Trujillo and Quintana repeat the allegations contained in  paragraphs 1-136 and 149-174 paragraphs as if fully set forth herein.

176.    Plaintiffs Trujillo and Quintana bring this cause of action on behalf of themselves and the other members of the California Subclass.

177.    California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

178.    Defendant violated California Business and Professions Code section 17500 by, *inter alia*, (a) misleadingly advertising that the ANEW Products would, among other things,"regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new

collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein and (b) concealing material information about the true nature of the ANEW Products, in that the ANEW Products did not, and could not, provide the benefits Avon promised to provide.

179.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and the other members of the California Subclass to purchase the ANEW Products over those of its competitors.  Defendant's deceptive practices were carried out on the labels and the marketing materials for the ANEW Products in order to induce Plaintiffs and the other members of the California Subclass to purchase the ANEW Products.

180.    Plaintiffs and the other members of the California Subclass would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and the other members of the California Subclass were denied the benefit of the bargain when they decided to purchase the ANEW Products over competitor products, which are less expensive.  Had Plaintiffs and the other members of the California Subclass been aware of Defendant's false and misleading advertising tactics, they would not have purchased the ANEW Products.

181.    The content of Avon's representations concerning the ANEW Products, as alleged herein, were of a nature likely to deceive reasonable consumers.

182.    Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

183.    Defendant's misrepresentations and omissions alleged herein are objectively

material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the California Subclass members' injuries.

184.    Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

185.    As a result of the foregoing, Plaintiffs and the other members of the California Subclass have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

**SIXTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

186.    Plaintiffs repeat the allegations contained in paragraphs 1-136 as if fully set forth herein.

187.    Plaintiffs bring this cause of action on behalf of themselves and the members of the national Class.

188.    Plaintiffs, and each member of the Class, formed a contract with Defendant at the time that Plaintiffs and Class members purchased the ANEW Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things,  "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape";

"reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein, made by Defendant on the packaging and in the marketing materials for the ANEW Products, as described above.  The packaging and marketing materials for the ANEW Products constitute an express warranty, became part of the basis of the bargain, and is a part of a standardized contract between Plaintiffs and Class members on the one hand, and Defendant on the other.

189.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

190.    Despite express warranties that the ANEW Products alone would help among other things,"regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

191.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing ANEW Products  which, among other things,"regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape

the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein.

192.    As a result of Defendant's breach of express warranty, Plaintiffs and the other members of the Class were harmed in the amount of the purchase price they paid for the ANEW Products.

**SEVENTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

193.    Plaintiffs repeat the allegations contained in paragraphs 1-136 as if fully set forth herein.

194.    Plaintiffs bring this cause of action on behalf of themselves and the other members of the national Class.

195.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

196.    Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger" or provide any of the other promised age-negating results as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description, (b) the goods were not of fair average quality within the description, and (c)

the goods were unfit for their intended and ordinary purpose in that are they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the advertisements, packaging and labeling of the products.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

197.    In reliance upon Avon's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the ANEW Products for use as anti-aging skincare products.

198.    The ANEW Products were not altered by Plaintiffs and Class members.  The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties.  The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiffs and Class members did not receive the goods as warranted.

199.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the ANEW Products or would not have purchased the products on the same terms if the true facts regarding their efficacy had been known; (b) they paid a price premium due to the mislabeling of ANEW Products; and (c) ANEW Products did not have the quality, efficacy or value as promised.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

200.    Plaintiffs repeat the allegations contained in paragraphs 1-136 as if fully set forth herein.

201.    Plaintiffs bring this cause of action on behalf of themselves and the other

members of the national Class

202.    By its wrongful acts and omissions for the ANEW Products, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiffs and the other members of the Class, who did not receive the goods to which they were entitled – as discussed in detail above – for the payments made to Defendant, and thus, Plaintiffs and the other members of the Class were unjustly deprived.

203.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

204.    Plaintiffs and the other members of the Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

205.    Certifying the Class, including the New York and California Subclasses, as requested herein, certifying Plaintiffs as the representatives of the Class and/or New York and California Subclasses respectively, and appointing Plaintiffs' counsel as counsel for the Class and/or Subclasses;

206.    Ordering that Defendant is financially responsible for notifying all members of the Class and/or New York and California Subclasses of the alleged misrepresentations and omissions discussed herein;

207.    Awarding Plaintiffs and the members of the Class and/or New York and California Subclasses compensatory damages in an amount according to proof at trial;

208.    Awarding restitution and disgorgement of Defendant's revenues and/or profits to Plaintiffs and the other members of the Class and/or New York and California Subclasses;

209.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

210.    Ordering Defendant to engage in corrective advertising;

211.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry to judgment in this action;

212.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

213.    For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.


Dated: June 7, 2013                  CARELLA, BYRNE, CECCHI, OLSTEIN,
                                     BRODY & AGNELLO, P.C.

                                     By: _____
                                         Caroline F. Bartlett
                                         James E. Cecchi
                                         Zachary S. Bower
                                         CARELLA, BYRNE, CECCHI, OLSTEIN,
                                         BRODY & AGNELLO, P.C.
                                         5 Becker Farm Road
                                         Roseland, NJ 07068
                                         Telephone:  (973) 994-1700
                                         Facsimile:  (973) 994-1744

Roland Tellis
Mark Pifko
Natasha Mehta
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFFER P.A.
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500

Adam J. Levitt
GRANT & EISENHOFFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Telephone: (312) 214-0000

Lionel Z. Glancy
Marc L. Godino
Casey E. Sadler
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

Antonio Vozzolo
Javier Hidalgo
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel:  (212) 983-9330

Mark Gardy
Meagan Farmer
GARDY & NOTIS
501 Fifth Avenue, Suite 1408
New York, New York 10017
Tel:  (212) 905-0509
*Additional Non-Lead Counsel for Plaintiffs and the Putative Class*