**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *IN RE: AVON ANTI-AGING SKINCARE CREAMS AND PRODUCTS MARKETING AND SALES PRACTICES LITIGATION* | Case No.: 1:13-cv-00150-JPO<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Lorena Trujillo, Monique Quintana, and Tara Tillman ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge:

## SUMMARY OF THE ACTION

1. This is a class action lawsuit against defendant Avon Products, Inc. ("Avon" or "Defendant") arising out of the sale of its ANEW brand of anti-aging skincare products. Avon markets several product lines under the ANEW brand, including ANEW Reversalist and ANEW Clinical. The ANEW Reversalist line includes the ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Day Cream, ANEW Reversalist Renewal Serum, and ANEW Reversalist Illuminating Eye System products (the "ANEW Reversalist Products"). The ANEW Clinical line includes the ANEW Clinical Advanced Wrinkle Corrector, ANEW Clinical Luminosity Pro Brightening Serum, ANEW Clinical Resurfacing Expert Smoothing Fluid, ANEW Clinical Pro Line Eraser, ANEW Clinical Lift & Firm Pro Serum, and ANEW Clinical Thermafirm Face Lifting Cream products (the "ANEW Clinical Products"). The ANEW Reversalist Products and ANEW Clinical Products are collectively referred to herein as the "ANEW Products."

2. Plaintiffs' claims concern the deceptive practices conducted by Avon in its marketing of the ANEW Products. These practices violate nationally uniform common law principles as well as the laws of the States of California and Nebraska, in which Plaintiffs reside. These practices also violate the law of the State of New York, if the Court determines that a

choice-of-law provision appearing on Avon.com and selecting New York law applies to transactions that occur on Avon.com.

3.    Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers, both nationwide and in the States of California and Nebraska, to prevent Avon from continuing to mislead consumers, and to obtain restitution and other appropriate redress for those who have purchased Defendant's ANEW Products.

4.    As more fully alleged herein, Defendant's schemes or artifices to deceive Plaintiffs and other members of the proposed Classes and Subclasses have consisted of systemic and continuing practices of disseminating false and misleading information *via* television commercials, Internet websites, product brochures or catalogues, and other marketing materials, all of which are intended to induce unsuspecting consumers, including Plaintiffs and all other members of the proposed Classes and Subclasses (as defined below), to spend millions of dollars on the ANEW Products, which are manufactured, distributed, marketed, advertised, and sold by Defendant.

5.    Avon used and continues to use aggressive marketing to mislead consumers into believing that the ANEW Products have medicinal properties comparable to dermatological treatments and procedures.  Indeed, Avon preys upon consumers who fear the effects of aging. In truth, none of the ANEW Products is capable of delivering on Avon's anti-aging promises, as explained in detail herein.

6.    Avon designs its marketing materials, including product brochures and Internet websites, to include indicia of scientific research and illusory promises of specific anti-aging results for the sole purpose of misleading and deceiving consumers.  As a result, Avon's marketing pitch is the same as that of the quintessential snake-oil salesman: Avon dupes consumers with false and misleading promises of results it knows that it cannot deliver, and does so with one goal in mind – reaping enormous profits.

7.    Indeed, the only reason a consumer would purchase the ANEW Products sold by Avon is to obtain the breakthrough and unique results that Avon promises.  The ANEW Products

are specialty skincare treatment products, often worn overnight, that are promoted as delivering anti-aging benefits, such as reversal of wrinkles. They are not, and are not marketed as, ordinary cosmetics meant to temporarily improve the user's appearance while the product is applied (such as lipstick or eye shadow products), and, as such, have no value beyond the promised anti-aging benefits.

8.     A direct effect of this pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiffs and members of the proposed Classes and Subclasses, were exposed to Avon's false and misleading misrepresentations in connection with their purchases of the ANEW Products, that in fact do not, and cannot, provide the results promised.

9.     Consumers purchase the ANEW Products through two retail channels: directly from Avon through Avon.com, which is Avon's official retail website, and indirectly from Avon through independent sales representatives, who distribute printed brochures or catalogues to consumers. Both media (that is, Internet website and brochure) contain substantially similar false and misleading statements regarding the ANEW Products.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because Defendant is headquartered and conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with the State of New York.

12.     Venue lies within this judicial district under 28 U.S.C. § 1391, because Defendant conducts business in this Judicial District and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this Judicial District.

**PARTIES**

13.     Plaintiff Lorena Trujillo is an individual and a citizen of California.

14.     Plaintiff Monique Quintana is an individual and a citizen of California.

15.     Plaintiff Tara Tillman is an individual and a citizen of Nebraska.

16.     Defendant Avon, a citizen of New York, is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 777 Third Avenue, New York, New York 10017.

17.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

**FACTUAL BACKGROUND**

18.     Avon proclaims itself to be the world's leading direct seller of cosmetic products.

19.     Currently, there are approximately 76 million baby boomers in the United States. By 2030, the United States government projects that one in five people will be sixty-five or older.  One of the defining features of the baby boomer population is its desire to maintain a youthful appearance.  As a result, anti-aging and aging health-related products and services are flooding the market.  A consumer base striving to keep signs of aging at bay will push the U.S. market for anti-aging from approximately $80 billion dollars today to more than $114 billion by 2015.

20.     Avon has aggressively sought to capitalize on this growing market.  To stay ahead of its competition, Avon has engaged in a widespread and pervasive scheme to deceive consumers about the efficacy of the ANEW Products.  Avon knows that consumers are willing to pay handsomely for anti-aging products.  To capitalize on this, Avon advertises the ANEW Products using affirmative misrepresentations of specific age-negating effects in its marketing and advertising materials, including its ubiquitous product brochures and on its website,

Avon.com. Avon also knows that reasonable consumers, including Plaintiffs, do not have the specialized knowledge necessary to identify the deceptive and misleading nature of Defendant's efficacy claims.

21. Defendant's ANEW Products are exclusively available through limited authorized retail channels, namely, Avon's independent sales representatives, who distribute Avon's brochures to market and sell products to consumers, and Avon's website, Avon.com, which offers for sale the same products without the intermediary of a sales representative. The ANEW Products are not sold in beauty parlors, salons, drug stores, department stores or other retail outlets, or *via* the Internet, other than exclusively through Avon's official website.

22. A central theme of Avon's deceptive marketing campaign, which permeates its print and Internet-based advertisements, is that its ANEW Products and the results promised by Avon, are supported by scientific research and resulting innovations. As described in more detail below, Avon's marketing campaign highlights the purported years of scientific research and study, clinical and consumer tests and other repeated references to scientific-sounding terms that, according to Avon, prove the promised results will be achieved by all who use the ANEW Products.

23. In fact, while such science-based claims provide Avon with an increased level of credibility among unsuspecting consumers, and therefore generate high sales volumes, the purported scientific research and discovery is simply part and parcel of Avon's false, misleading, and/or deceptive campaign to sell completely worthless creams and salves.

24. By way of example, Avon misleads consumers by claiming that many of the advertised results associated with the ANEW Products are supported by "in-vitro testing," which Avon knows sounds scientifically impressive to average consumers. In fact, "in-vitro" is Latin for "in glass" and it means that the results are based on lab testing rather than "in vivo" testing on living people. In other words, "in-vitro" results are based on ingredient testing in a test tube or petri dish, which means that the ingredients' ability to penetrate actual human skin cannot be assessed. Recent research into the reliability of in-vitro testing for determining the efficacy of

topically applied products casts considerable doubt on such results. *See, e.g.*, S.N. Andrews et al., "Transdermal delivery of molecules is limited by full epidermis, not just stratum corneum," *Pharm. Res.* 30: 1099-1109 (2013). This research suggests that in-vitro testing is particularly insufficient to support drug and cosmetic efficacy claims because such tests fail, by design, to take account of the resistance of the "viable epidermis," a layer of skin beneath the *stratum corneum*. *Id.* at 1. The *stratum corneum* is composed of "dead flattened corneocytes that are surrounded by a lipid extra-cellular matrix," and is the only layer studied in in-vitro testing. *Id.* The full epidermis is comprised of the *stratum corneum* and the viable epidermis, the latter of which is "a cellular, avascular tissue measuring 50-100 [micrometers] thick." *Id.* Because "successful transdermal drug [or cosmetic] delivery typically involves drug [or cosmetic ingredient] transport across the epidermis to the superficial dermal capillary bed," *id.*, it is impossible to investigate the effects of the ingredients in the ANEW Products at the cellular level using in-vitro testing. Avon is well aware of this reality yet continues to represent to consumers that "in-vitro" results translate to results in actual human skin. They do not.

25. One example of an ingredient class found in the ANEW Products with good "in-vitro" results that does not translate to skin benefits is the family of peptides. Peptides are amino acids that can, in some circumstances, encourage limited production of preliminary phases of collagen and elastin (e.g., procollagen) when applied topically. However, only prescription retinoids have an effect on wrinkles. In "in-vitro" tests on cells, peptides have been shown to boost collagen production, reverse skin damage, lighten discoloration, and much more. While Avon touts these "in-vitro" results in its marketing, it fails to disclose what it knows is the truth: most peptide molecules are too large to penetrate the epidermis, which means they cannot possibly deliver the in-vitro results in real life. And, even if the peptide is one that could possibly penetrate the skin, the degree of penetration and thus the benefit to consumers is significantly less in actual use by consumers than the "in-vitro" test results purport to provide simply because there is no barrier in "in-vitro" testing, whereas the epidermis is a substantial barrier that makes molecular penetration difficult. Avon is aware of this flaw in transposing in-

vitro testing results to real-world consumer usage, yet does not disclose it to consumers. Accordingly, Avon's use of "in-vitro" tests as a marketing ploy is misleading to consumers.

26. Tretinoin was the first retinoid approved by the FDA to treat wrinkles. This prescription retinoid works by increasing the production of new collagen. It also stimulates new blood vessels in the skin, giving skin a rosy appearance, fading age spots, and reducing precancerous skin spots called actinic keratosis. Tretinoin also may help prevent more serious effects of ultraviolet radiation. To see any such benefits of using prescription retinoids takes months, if not years, of regular, daily use. None of the ANEW Products contains any retinoid ingredient, prescription strength or otherwise.

27. One of the reasons Avon saturates its marketing campaigns with misleading scientific references is to create the perception that the ANEW Products have drug-like efficacy, when, in fact, they do not. Avon knows that such a perception will increase sales. Indeed, the ANEW Clinical Products are all advertised as the "*at-home alternative to the dermatologist*."

28. To permanently reduce wrinkles would require cellular manipulation, which the chemical properties of the ANEW Products' ingredients cannot achieve. At most, ANEW Clinical Advanced Wrinkle Corrector and ANEW Reversalist Night Renewal Cream (or the Night Renewal Serum, based on the same formula) may temporarily improve the appearance of wrinkles, as other cosmetic companies often state in promoting their own products, but Avon goes much further than its competitors by promising to actually reverse wrinkles or replace in-office dermatological procedures (Botox injection, facelift, etc.), among other bombastic claims.

29. The Mayo Clinic recognizes that, "while many over-the-counter wrinkle creams and lotions promise to reduce wrinkles and prevent or reverse damage caused by the sun . . . these products are not likely to make a noticeable difference in your skin." The reason is simply that, other than prescription retinoids, no ingredient or mix of ingredients has been shown to reduce or reverse wrinkles or reverse the effects of aging.

30. Avon's overreaching drug-like efficacy claims for its ANEW Products caught the attention of the federal Food and Drug Administration ("FDA").

31.     On October 5, 2012, the FDA issued a warning letter (reference number 262337) to Avon that said, in part:

> [Y]our products Anew Clinical Advanced Wrinkle Corrector, Anew Reversalist Night Renewal Cream, Anew Reversalist Renewal Serum, Anew Clinical Thermafirm Face Lifting Cream, . . . appear to be intended for uses that cause these products to be drugs under section 201(g)(1)(C) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 321(g)(1)(C)]. The claims on your web site indicate that these products are intended to affect the structure or any function of the human body, rendering them drugs under the Act. The marketing of these products with claims evidencing these intended uses violates the Act.
>
> . . .
>
> Your products are not generally recognized among qualified experts as safe and effective for the above referenced uses and, therefore, the products are new drugs as defined in section 201(p) of the Act [21 U.S.C. § 321(p)]. Under section 505(a) of the Act [21 U.S.C. § 355(a)], a new drug may not be legally marketed in the U.S. without prior approval from FDA in the form of an approved New Drug Application (NDA).

32.     Avon spends millions of dollars misleading customers about the efficacy of its products by stating that the ANEW Products are superior to other comparable products because they can provide superior benefits that are supported by scientific discoveries and extensive research, tests, and studies. Avon's claims are simply a sham. In fact, as the FDA has recognized, if the ANEW Products could actually do what they claim, Avon would be required to submit a New Drug Application since its products would be new drugs.

33.     Avon has earned handsome profits by misleading the public with claims for the ANEW Products, such as:

> Anew Reversalist: "Reduce wrinkles with your skin's natural repair process. World's 1st with Activinol. Designed to boost Activin, helping to reactivate skin's repair process and **dramatically remove visible wrinkles**." (emphasis in original).
>
> "ANEW Clinical features breakthrough targeted treatments that offer at-home answers to the costly, time consuming and often painful procedures found in a dermatologist's office. These cutting edge products deliver quick, age transforming results at home and

return skin to a more youthful state without a doctor's appointment."

34. Avon claims that it has proven these "breakthroughs" and "unprecedented discover[ies]" with such things as "in-vitro tests on 3D reconstructed skin," "exhaustive research, testing & review" and "clinical" studies. Avon knew or should have known that its representations about the ANEW Products' abilities to provide the specific, promised results are false and misleading, and Avon purposely misrepresented and failed to disclose the unreliability of its scientific testing to consumers.

35. Avon has spent millions of dollars on a pervasive, deceptive, and misleading nationwide advertising campaign regarding the efficacy of the ANEW Products. Avon's marketing, such as the advertisements pictured below, highlight the purported impact that the ANEW Products have on the genes and the composition of consumers' skin.

36. Avon's specific claims of efficacy cannot be defended as mere puffery. Avon's claims of specific anti-aging results supported by purportedly scientific research and discoveries go beyond mere sales puffery by claiming that certain breakthrough discoveries enable the ANEW Products to provide unique age-negating benefits, like reversing wrinkles, and by providing specific affirmations and promises that those benefits flow to product users. Indeed, such specific scientific references are an integral part of Avon's marketing campaign for the ANEW Products, as evidenced by Avon's heavy use of such technical efficacy promises. By promising specific results, Avon's advertising transcends the realm of mere puffery and becomes actionably deceptive and misleading.

37. In fact, Avon's specific efficacy claims even extend to claims of patents and Nobel prize winning research. For example, Avon has touted the inclusion of a special patented molecule, the "A-F33 Molecule," in the ANEW Clinical Products to give the impression that these products provide better anti-aging results than even medical-grade ingredients (*i.e.*, retinol) or cosmetic procedures, such as injectable collagen. Specifically, Avon represents that it discovered "[t]he Anti-aging Breakthrough of the Decade" and that unlike FDA-approved

retinol,[1] A-F33 "turns off collagen blocking to turn up collagen production."  As a result, "deep wrinkles begin to fade" in one (1) week.[2]  As shown below, Avon even expressly compares its ANEW Clinical Products (such as Pro Line Eraser) favorably to retinol, a prescription-strength wrinkle reduction treatment.

38.    Exemplars of Avon advertisements touting the "A-F33 Molecule" include:

A.



---

[1] Retinol is part of a group of derivative compounds of the vitamin A family. Retin-A is the prescription form, and has been shown to reduce fine lines, smooth skin texture and help normalize pigmentation.  *See* http://www.huffingtonpost.com/2012/10/24/retinol-anti-aging-wrinkles_n_2002971.html (last accessed January 24, 2013).

[2] Available at http://shop.avon.com/shop/catalog/2012/23/en/p1.html?ba=null (last accessed January 17, 2013).

B.



C.



39.     Even if one or more of Avon's claims for its ANEW Products is literally true, when viewed in their totality, the promises made by Avon regarding the efficacy of the ANEW Products are nevertheless misleading to the average consumer and are therefore actionable regardless of their literal truthfulness.

**Avon Promotes Its ANEW Clinical And Reversalist Products Using Consistent False And Misleading Marketing Messages**

40.     In each of the ANEW collections, Avon sells multiple products.

41.     For example, in the ANEW Clinical collection, there are several products, including ANEW Clinical Advanced Wrinkle Corrector, ANEW Clinical Luminosity Pro Brightening Serum, ANEW Clinical Resurfacing Expert Smoothing Fluid, ANEW Clinical Pro Line Eraser, ANEW Clinical Lift & Firm Pro Serum, and ANEW Clinical Thermafirm Face Lifting Cream.  Avon markets and advertises each of the ANEW Clinical Products around a focused, specific thematic message that Avon wraps into all of its marketing and advertising materials for those products: that the ANEW Clinical Products are comparable or equivalent to dermatological procedures in efficacy.  Avon repeats this message in all of the marketing materials for its ANEW Clinical Products.

42.     The ANEW Reversalist collection also contains several products, including ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Day Cream, ANEW Reversalist Renewal Serum, and ANEW Reversalist Illuminating Eye System.  Like ANEW Clinical, Avon markets and advertises each of the ANEW Reversalist Products around a focused, specific thematic message that Avon wraps into all of its marketing and advertising materials for those products: that the ANEW Reversalist Products are capable of reversing wrinkles and effectively treating moderate signs of aging.  Avon repeats this message in all of the marketing materials for its ANEW Reversalist Products.

**Avon's False and Misleading Representations**

**Concerning the ANEW Clinical Products**

43.     ANEW Clinical Advanced Wrinkle Corrector sells for $32.00, ANEW Clinical Luminosity Pro Brightening Serum sells for $39.99, ANEW Clinical Resurfacing Expert Smoothing Fluid sells for $38.00, ANEW Clinical Pro Line Eraser sells for $39.00, ANEW

Clinical Eye Lift Pro Dual Eye System sells for $30.00, Aɴᴇᴡ Clinical Lift & Firm Pro Serum sells for $39.99, and Aɴᴇᴡ Clinical Thermafirm Face Lifting sells for $32.00.

44.     Avon markets Aɴᴇᴡ Clinical with claims that it "features breakthrough targeted treatments that offer at-home answers to the costly, time consuming and often painful procedures found in a dermatologist's office."  Indeed, according to Avon, Aɴᴇᴡ Clinical Products deliver "quick, age transforming results at home and return skin to a more youthful state without a doctor's appointment."  Avon's overall marketing theme for Aɴᴇᴡ Clinical Products is thus centered on promises that the products provide at-home answers or comparable alternatives to professional dermatological procedures.  Moreover, Avon promises that the Aɴᴇᴡ Clinical Products will "**rebuild[] collagen in 48 hours**," "**stimulate elastin**," "**regenerate hydroproteins**," and "**rebuild, restructure and protect skin** from the inside out."

A.



B.



45.     For the reasons discussed herein, Avon's efficacy claims for the ANEW Clinical Products are false, misleading and deceptive because they do not and cannot provide the promised results.   Accordingly, the efficacy claims are reasonably likely to, and do in fact, deceive the consuming public.

**Avon's False and Misleading Representations**

**Concerning Avon's ANEW Reversalist Products**

46.     ANEW Reversalist Day Renewal Cream SPF 20 sells for $32.00, ANEW Reversalist Night Renewal Cream sells for $32.00, ANEW Reversalist Illuminating Eye System sells for $30.00, and ANEW Reversalist Renewal Serum sells for $34.99.

47.     Avon states that ANEW Reversalist Products are meant for "[w]omen experiencing the moderate signs of aging, including wrinkles, loss of firmness and discolorations."   The marketing theme for Avon's ANEW Reversalist product line focuses on "Activinol Technology [which] helps **reactivate skin's repair process to recreate fresh skin**."   Among other things, Avon promises that "Activin" is the "key to **skin repair**," that it will lead to "**wrinkle reversal**," and that ANEW Reversalist products are "[d]esigned to BOOST ACTIVIN, ANEW'S

14

ACTIVINOL technology helps reactivate skin's REPAIR process to recreate FRESH SKIN and helps **DRAMATICALLY REVERSE VISIBLE WRINKLES**."

48.     For example, such representations are depicted as follows in Avon's marketing materials:



49.     Additionally, among other examples, Avon's marketing materials depict ANEW Reversalist Night Renewal Cream, ANEW Reversalist Renewal Serum, ANEW Reversalist Renewal Cream, and ANEW Reversalist Illuminating Eye System together as follows:



50.     For the reasons discussed herein, Avon's efficacy claims for the ANEW Reversalist Products are false, misleading and deceptive because the Reversalist Products do not and cannot provide the promised results.  Accordingly, the efficacy claims are reasonably likely to, and do in fact, deceive the consuming public.

**Avon's False and Misleading Representations**

**Regarding Clinical Testing and Scientific Research**

51.     Avon's product marketing strategy includes references to "clinical" studies or trials and "consumer perception studies" that purport to "prove" that the promised results are real, and will be enjoyed by actual users of the products.  The clear implication of these representations is that these are the results that typical users of the product can expect.  However, Avon knows, or reasonably should know, that the purported "proof" is not reliable and does not translate to actual results for consumers.  Despite this, Avon continues to convey its misleading

message of "proof" because it knows that average consumers are swayed by such indicia of credibility and Avon takes full advantage of this to profit on consumers' gullibility.

52.     As noted above, Avon misleads consumers by claiming that many of its promised results are supported by "clinical tests" or "consumer-perception studies" which Avon knows sound scientifically reliable to the average consumer, but which are, in fact, not representative of results consumers will achieve.

53.     In fact, Avon designs such "tests" to support the promised results knowing that the results will not be reliable and will not translate to the results consumers actually receive. Evidence of this practice is reflected in Avon's use of "consumer-perception" studies to support its efficacy claims for its ANEW Products. For example, for its ANEW Clinical Thermafirm Face Lifting Cream, Avon touts, "Our effective lifting treating is formulated to **fortify damaged tissue with new collagen**. In just 3 days, see tighter, firmer, more lifted skin.*" The claim, however, is based upon nothing more than an empty, self-serving "consumer-perception study" which offers no details or support of any kind for the claim that the product will "fortify damaged tissue with new collagen."

54.     Avon's consumer perception studies are fundamentally flawed for a host of reasons, including that (a) the study populations typically range between 50-250 participants and are thus grossly inadequately powered and unrepresentative; (b) Avon uses paid focus group attendees that are incentivized to provide positive feedback in order to receive return invitations to participate; and (c) Avon uses self-selected testing populations.

55.     Many of the efficacy claims Avon uses to promote the ANEW Clinical Products are derived from consumer perception studies that consist of providing focus group attendees with a "wish list" of statements Avon wants to use, and asking them to indicate whether they agree with that statement. Avon then passes off as truth any statement that received at least 50% approval.

56.     In addition to the foregoing claim for ANEW Clinical Thermafirm Face Lifting Cream, Avon contends that after 4 weeks of use of that product, "87% of women felt a more

youthful facial definition and shape was restored; and 77% of women felt their jawline and neck were sculpted." These results are similarly "[b]ased on women who expressed an opinion in a consumer-perception study." The use of statistics in this manner without supporting quantitative detail is misleading. Avon does not disclose how many women participated in the consumer-perception study, how many expressed an opinion and how many did not, or how many expressed a favorable opinion, or even what constitutes a favorable opinion.

57. Avon's "clinical" tests are no more reliable than its consumer perception studies. On information and belief, and investigation of counsel, Avon's clinical testing consists of subjective visual grading assessments conducted by inadequately trained technicians rather than scientists using an arbitrary numeric scale to "quantify" such unquantifiable variables as skin texture, pigmentation and discoloration, and wrinkles.

58. Avon considers clinical tests to have succeeded in verifying the truth of any given marketing claim if the testing population, on an aggregate basis and according to the visual inspection of an examiner whose only professional prerequisite is a bachelor's degree in any science field, shows "10% improvement" in the above unquantifiable variables over the course of the study. Percentage of improvement is, however, similarly unquantifiable and completely arbitrary. Moreover, the studies are generally too short in duration to be reliable, employ populations too small to deliver reliable results, are not blinded, and are not placebo-controlled or controlled in any other scientifically reliable manner.

59. Despite these jarring limitations, Avon passes off as truth any efficacy claim that survives this clinical inquiry. Virtually no claims are filtered out or rejected based on such loose clinical inquiries.

60. In sum, the results reported by Avon to support its efficacy claims are deceptive because these are ***not*** the results that consumers will actually achieve by use of the ANEW Products. Such misleading use of studies is also contrary to the Federal Trade Commission's guidelines on use of consumer testimonials, which provides that representations concerning testimonials in advertising must reflect the **typical** results consumers can expect, and if

advertisers choose to include results that are not typical of an ordinary consumer's experience with a product, they must conspicuously disclose the results an ordinary consumer can expect to achieve.[3]

61.     Upon information and belief, and investigation of counsel, flaws in Avon's clinical studies and consumer perception tests include, but are not limited to the following: (1) in both types of studies, Avon employs populations with too few participants to yield results that are scientifically meaningful or statistically significant such that Avon could reasonably believe that the results would translate to consumers, and (2) in consumer perception studies, Avon uses participants that are biased (*e.g.*, incentivized to provide positive feedback), self-selected or cherry-picked to provide testimonials or other feedback, and/or the study consists of indicating levels of agreement with favorable responses, making the results selectively determined such that Avon is able to manipulate the outcome of the study, making it appear to support the purported anti-aging benefits of the ANEW Products.

62.     Moreover, even when Avon does disclose information about consumer perception studies, Avon does so in a misleading manner.  Specifically, Avon misleads consumers by its use of asterisks in combination with the design of its website that actually hides the text and the true meaning of the asterisks.  For example, as the screenshots below indicate, Avon claims that the ANEW Clinical Thermafirm Face Lifting Cream is "formulated to fortify damaged tissue with new collagen.  In just 3 days, see tighter, firmer, more lifted skin.* . . . Read More."  The information pertaining to the asterisks – that the claimed benefit is based on mere consumer perception – is hidden from view.  Unless the consumer clicks the "Read More" link, she would not know that the result is supported by nothing more than the subjective responses to a "wish list" of favorable statements provided by a small group of self-selected focus group participants in an inadequately powered "study" that is, in fact, a glorified interview.

---

[3] FTC has made clear that consumer testimonials in advertising "are not competent and reliable scientific evidence" and that testimonials concerning key attributes of a product must be "representative of what consumers will generally achieve with the advertised product…in actual, albeit variable, conditions of use."  16 CFR § 255.2.



63. By hiding the fact that such claims of miraculous results ("fortify damaged tissue with new collagen. In just 3 days, see tighter, firmer, more lifted skin") are based upon nothing more than ambiguous and misleading subjective consumer perceptions, Avon deceives consumers into thinking that the results are better (and more believable) than they actually are. Once consumers receive the product after ordering it, however, they learn that the product does nothing at all for their skin, least of all "fortify damaged tissue with new collagen."

64. Avon makes similar claims for its ANEW Reversalist Renewal Serum: "75% of people felt like they had new skin overnight.* In 2 weeks, skin looks & feels dramatically tighter.* 60% improvement in discolorations.** Over time, 88% of people agreed, skin looks dramatically younger.***…. Read More." Here again, the information pertaining to the multiple sets of asterisks is hidden from view. Unless the consumer clicks the "Read More" link,

she would not know that the claimed results are supported merely by consumer perception and subjective opinion.

65.    Avon intentionally obscures the consumer perception information throughout its advertising for the ANEW Products because Avon knows that the results are not representative, and yet Avon presents the statistical information in a misleading way so that the average consumer would expect similar results for themselves.

**Use of Models and Celebrity Spokespeople**

66.    Avon makes further use of print, television and internet advertising, wherein Avon touts the benefits of its skin-care products using celebrity spokespersons who claim to exemplify the results of the products.

67.    What Avon fails to disclose is that the images of the celebrities are airbrushed, digitized, embellished, "Photo-shopped" or otherwise altered and, therefore, contrary to the claims made by Avon, cannot and do not illustrate the effectiveness of its products.  Avon also fails to disclose that the celebrity (and other) models used in its visual ads do not use the advertised ANEW Products, and did not use the advertised ANEW Products as directed for the period of time indicated on the packaging.  In sum, the images used by Avon to sell its ANEW Products have nothing to do with the effectiveness of the products themselves.

68.    The use of Photoshop to alter the perception of consumers has been criticized.  In fact, the National Advertising Division of the Council of Better Business Bureaus ("NAD") recently called for a ban on the Photo-shopping of cosmetic advertisements.  The NAD has noted that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

69.    Despite these warnings, and the increased scrutiny regarding the use of photo-shopped images in the marketing of skin care products, upon information and belief, and investigation of counsel, Avon has used and continues to use altered images in its ANEW Products advertising, including the highly embellished image of model Paulina Porizkova from

Avon's brochure in the photo on the left, as compared to the second photo of her at a public appearance on the right.

 

70.     Indeed, upon information and belief, Avon's use of Photoshop is pervasive throughout its marketing and advertising, as further evidenced by comparing these images of Jacqueline Bisset, the spokesperson for the ANEW Platinum Collection:







71.     Such deceptive use of celebrity spokespersons further illustrates the lengths to which Avon will go to deceive consumers.

**Avon's Brochures and Website**

72.     The vast majority of Avon's products, including the ANEW Products, are sold through independent sales representatives that make Avon's printed product brochures available to consumers.  The brochures are compilations of Avon's advertising content for each of its products and feature textual descriptions of the products on offer, typically including an identification of the problems the product is meant to treat or resolve, the effects consumers can expect to see or other "reasons to buy" the product, and the product price.

73.     The marketing statements promoting the ANEW Products that appear in Avon's brochures are consistent with Avon's other print advertising (which appears in popular magazines such as *Glamour*), internet advertising on Avon.com, and television advertising.  The same efficacy claims, in particular, are common to all advertising media, including brochure, print advertising, television advertising, and internet advertising.

74.     During the class period, Avon's product brochures have included, among others, the following efficacy claims for the ANEW Products: "regenerate hydroproteins to help visibly minimize creasing" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "help strengthen skin's support layers" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "improve fine & deep wrinkles up to 50%" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "deactivate collagen blocking" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "rebuild collagen to help plump out lines and wrinkles" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "fortify damaged tissue with new collagen" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "tighten the connections between skin's layers" (ANEW Clinical Products, including Advanced Wrinkle Corrector); "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles" (ANEW Reversalist Products, including Night Renewal Cream and Night Renewal Serum); and "reverse wrinkles" (ANEW Reversalist Products, including Night Renewal Cream and Night Renewal Serum).

75. During the class period, the same or substantially similar efficacy claims promoting the same ANEW Products appeared on Avon.com, including in product descriptions and on other pages with links to buy the products directly from Avon.com.

76. Avon.com is the only means through which members of the general public can purchase products directly from Avon.

<u>**The Results of Avon's Deceptive Conduct**</u>

77. Ignoring the inability of the ANEW Products to provide the promised results, Avon's pervasive false and misleading marketing campaign leaves consumers with the distinct impression that its products are uniquely able to provide certain permanent age-negating effects on human skin.

78. Avon compounds this deception by maintaining that the products and the promised results are based on years of research and scientific study, breakthrough technologies, and unique ingredients.

79. Avon hammers this point home with its repeated references to research, labs, and claims of scientific breakthroughs, among other things, as a way to bolster the credibility of the products in the eyes of consumers and to bolster its own profits. In fact, these claims are merely part and parcel of Defendant's false and misleading advertising program for its ANEW Products.

80. In addition to the material misrepresentations as described herein, Defendant's actions are likewise actionable based on their material omissions, which similarly induced Plaintiffs and the Classes and Subclasses to purchase the ANEW Products. For example, Defendant has failed to disclose the following:

- That clinical and consumer tests referenced in marketing materials were designed exclusively to be used in Avon's marketing efforts;

- That the "in-vitro" tests relied on by Avon cannot translate to actual results in humans;

- That clinical tests referenced in marketing materials consist of a subjective visual grading process conducted by insufficiently trained examiners;

- That study populations in clinical and consumer perception tests purportedly supporting the efficacy claims were inadequately powered, biased, and not representative of the public;

- That visual advertisements depicting models have been digitally manipulated, and that those models did not use the ANEW Products.

81. Avon is in a position to actually know, or should know, that the anti-aging results it promises for the ANEW Products are not possible, *i.e.*, its skincare products cannot "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles"; or provide any of the other promised age-negating results as described herein. Avon fails to disclose that its products do not perform as promised.

82. As long as Avon continues to engage in deceptive and misleading advertising of the ANEW Products, Plaintiffs and the other members of the Classes and Subclasses will continue to be harmed.

83. Avon knows that consumers pay special attention to product claims that are science-oriented. Avon further knows that consumers can be duped into paying a high price for products that purport to provide clinically proven skin-correcting and age-negating benefits comparable to what may be achieved by dermatological and other medical procedures.

84. Avon also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater profits.

85. Indeed, it is for these precise reasons – increased sales and profits – that Avon intentionally engages in its deceptive marketing and advertising practices.

86.     Avon has succeeded in its deceit and has enjoyed massive profits from its deceptive campaigns.  Such enormous profits would not have occurred but for Avon's deceptive and misleading marketing and advertising practices.

87.     Plaintiffs and the other members of the Classes and Subclasses would not have purchased the ANEW Products had they known the truth regarding the deceptive marketing promises described herein.

88.     Moreover, Plaintiffs and the other members of the Classes and Subclasses believed they were purchasing Avon products that would provide the promised age-negating benefits as detailed herein.  In reality, although Plaintiffs and the other members of the Classes and Subclasses paid for these unique ANEW Product benefits, they did not get what they paid for. Instead, the products Plaintiffs and the other members of the Classes and Subclasses purchased did not provide the promised age-negating results – and indeed, they presented no visible results at all.

89.     Because of Avon's deceptive marketing, Plaintiffs and the other members of the Classes and Subclasses have been harmed as a result of their purchases of the ANEW Products.

**Avon's Deceptive Practices Result in Unfair Profits**

90.     As a result of the foregoing, Defendant's efficacy claims regarding the ANEW Products are deceptive and misleading.  Had Plaintiffs and the other members of the proposed Classes and Subclasses been aware of the truth about Defendant's ANEW Products, they would not have purchased the ANEW Products.

91.     Indeed, Defendant was in a superior position to know, and did know, that its claims and advertisements were deceptive and false and they failed to inform consumers that its ANEW Products cannot perform as advertised and as promised.

92.     Instead, Avon allows its deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate its false claims and promises.  Ultimately, Avon takes advantage of every marketing avenue of the modern age, as well as relying on tried and true traditional methods, in order to ensure that its false and deceptive marketing message

permeates the general consumer consciousness. Avon uses television advertising, Internet marketing, and social media, as well as celebrity endorsements, "Independent Sales Representatives," and the glossy print brochures for which Avon is famous. But, no matter which marketing avenue reaches a consumer, Avon drives home the same false and deceptive efficacy claims.

93.    Without knowing the truth as to the efficacy of the ANEW Products, Plaintiffs and the other members of the Classes and Subclasses received totally worthless products.

**Plaintiffs' Claims Against Avon**

**Plaintiff Lorena Trujillo**

94.    Plaintiff Trujillo is a resident of Torrance, California, in Los Angeles County, California.

95.    Plaintiff Trujillo purchased Avon's ANEW Reversalist Night Renewal Cream between 2011 and 2013 at full retail price for personal use.

96.    In deciding to purchase Avon's ANEW Reversalist Night Renewal Cream, Plaintiff Trujillo saw and relied on the statements on Avon's website, believing Avon's claims, as discussed above, including that Avon's "exhaustive research, testing & review has resulted in an unprecedented discovery by AVON scientists," and she believed that if she used Avon's ANEW Reversalist Night Renewal Cream, it would "boost Activin, . . . reactivate [her] skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles." These representations were material to Plaintiff Trujillo. Plaintiff Trujillo viewed similar efficacy claims in an Avon product brochure provided to her by an Avon independent sales representative.

97.    Plaintiff Trujillo was denied the benefit of the bargain when she decided to purchase Avon's ANEW Reversalist Night Renewal Cream because she paid for a product that would "reactivate [her] skin's repair process to recreate fresh skin," but she received a product that did not, and could not, provide the benefits it promised to provide and, indeed, she received

a valueless product with no anti-aging benefits whatsoever. Accordingly, Plaintiff Trujillo suffered injury in fact and lost money as a result of Avon's false and misleading representations.

98.     Had Avon disclosed to Plaintiff Trujillo the truth about the Products, for instance on its Avon.com website, Plaintiff Trujillo would have seen and been aware of the disclosure. But for Avon's misrepresentations, Plaintiff Trujillo would not have purchased and consumed the ANEW Products. Instead, had she known the truth, Plaintiff Trujillo would not have purchased any ANEW Products at all.

**Plaintiff Monique Quintana**

99.     Plaintiff Quintana is a resident of San Ysidro, California, in San Diego County, California.

100.    Plaintiff Quintana purchased Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum on a monthly basis for approximately one year between 2010 and 2012 at full retail price for personal use.

101.    Plaintiff Quintana's purchases of Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum were made in reliance on Avon's representations and omissions, as discussed above, regarding the products' anti-aging effects. These representations and omissions were material to Plaintiff Quintana's decision to purchase the products.

102.    For example, Plaintiff Quintana was exposed to Avon's claims that the ANEW Reversalist Products were "[d]esigned to boost Activin" that "ANEW's Activinol technology helps reactivate skin's repair process to recreate fresh skin and help dramatically reverse visible wrinkles, " and that the product's efficacy promises were based on scientific research, testing, and discovery. Moreover, Plaintiff Quintana was exposed to Avon's claims that ANEW Clinical Advanced Wrinkle Corrector would improve her deep wrinkles. Plaintiff Quintana viewed these and other efficacy claims in an Avon product brochure provided to her by an Avon independent sales representative.

103.    Had Avon's ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum been accurately and appropriately marketed, Plaintiff Quintana would not have bought them.

104.    As a result of Avon's misrepresentations and failure to disclose the true nature of its ANEW Clinical Advanced Wrinkle Corrector, ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum products, Avon improperly deprived Plaintiff Quintana of significant funds and denied her the benefit of the bargain.

**Plaintiff Tara Tillman**

105.    Plaintiff Tara Tillman is a citizen of Nebraska.

106.    Plaintiff Tillman purchased ANEW Reversalist Night Renewal Cream and ANEW Reversalist Renewal Serum from Avon's website, Avon.com, at full retail price for personal use on multiple occasions, starting in November 2009 and continuing periodically through July 2010.

107.    Plaintiff Tillman learned about the ANEW Reversalist product line from a television advertisement that aired in Fall 2009 promoting the ability of ANEW Reversalist products to visibly reduce and reverse wrinkles.  After viewing that television commercial promoting ANEW Reversalist products, including ANEW Reversalist Renewal Serum, Plaintiff Tillman visited Avon.com to learn more about the ANEW Reversalist products and to make her purchases.

108.    On Avon.com, Plaintiff Tillman reviewed additional information about the ANEW Reversalist products supplied by Avon, including representations for the ANEW Reversalist Night Renewal Cream and Renewal Serum touting their ability to reduce and reverse wrinkles based on purported technological advances Avon had made in skincare.

109.    Plaintiff Tillman purchased the ANEW Reversalist products because she wanted an anti-aging product that could reverse wrinkles.

110.    Plaintiff Tillman used the ANEW Reversalist products as directed, but the products failed to reverse her wrinkles.  Plaintiff Tillman continued buying and using the ANEW

Reversalist products for months before realizing that the ANEW Reversalist products had no impact on her wrinkles and were, therefore, completely worthless.

111.    Plaintiff Tillman also exhibited a skin reaction to the ANEW Reversalist products.

112.    In or about February 2010, Plaintiff Tillman signed up to become an Avon independent sales representative, principally in order to obtain a discount on certain Avon products.  Plaintiff Tillman continued to purchase the ANEW Reversalist products for her own use while registered as a sales representative.

113.    Plaintiff Tillman terminated her sales representation account near the end of 2010, and had ceased purchasing the ANEW Reversalist products by the second half of 2010.

114.    While registered as a sales representative, Plaintiff Tillman saw, read, and received Avon's material misrepresentations, including Avon's many false and misleading product claims, in its sales brochures and other marketing materials, as described above, prior to each purchase of the ANEW Reversalist products she made after February 2010.

115.    In particular, Plaintiff Tillman was exposed to Avon's statements that ANEW Reversalist Renewal Serum was "[d]esigned to boost Activin. ANEW's Activinol technology helps reactivate skin's repair process to recreate fresh skin and help dramatically reverse visible wrinkles."   Moreover, Plaintiff Tillman was exposed to statements by Avon that ANEW Reversalist Night Renewal Cream and ANEW Reversalist Renewal Serum would make her skin look and feel dramatically tighter and that the products' efficacy promises were based on scientific research, testing, and discovery.

116.    These false and misleading statements received by Plaintiff Tillman during the Class Period were material and influenced her decision to purchase Avon ANEW Reversalist Night Renewal Cream and ANEW Reversalist Renewal Serum.

117.    Plaintiff Tillman would not have purchased the ANEW Reversalist products had Avon not made such false and deceptive claims and instead disclosed the true nature of its products.

118.    Plaintiff Tillman was denied the benefit of the bargain when she decided to purchase Avon's ANEW Reversalist Night Renewal Cream, and ANEW Reversalist Renewal Serum because she paid for products that would "reactivate [her] skin's repair process to recreate fresh skin," and "reverse wrinkles," but she instead received products that did not, and could not, provide the benefits promised and, indeed, she received valueless products with no anti-aging benefits whatsoever.  Accordingly, Plaintiff Tillman suffered injury in fact and lost money as a result of Avon's false and misleading representations.

119.    Despite consistent use, Plaintiff Tillman did not experience any of the promised results from Avon's ANEW Reversalist Night Renewal Cream and ANEW Reversalist Renewal Serum.

## Tolling of the Statute of Limitations

120.    Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and the other members of the Classes and Subclasses could not reasonably have discovered the true nature of the ANEW Products until shortly before litigation concerning the ANEW Products commenced.  In particular, it was the FDA's October 2012 warning letter that notified consumers that the ANEW Products were being falsely promoted.  Additionally, because the bulk of the anti-aging effects promised by Defendant are long-term effects or effects that take time to materialize, Plaintiffs and the other members of the Classes and Subclasses could not have discovered that the ANEW Products did not work as represented by Defendant until after a prolonged period of use.

121.    Defendant was and remains under a continuing duty to disclose to Plaintiffs and the other members of the Classes and Subclasses the true character, quality, and nature of the ANEW Products, that those products do not and cannot produce anti-aging benefits (including reversing wrinkles), and that the promised benefits are entirely illusory.  As a result of Defendant's active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

122. In addition, any statute(s) of limitations otherwise applicable to Plaintiffs' claims have been tolled by the *American Pipe* doctrine because such claims arise out of the same underlying conduct alleged in earlier complaints filed in this action. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *see also Cullen v. Margiotta*, 811 F.2d 698, 720-21 (2d Cir. 1987), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987).

## CLASS ACTION ALLEGATIONS

123. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs are informed and believe and, on that basis, allege that Defendant has sold tens of thousands of units of the ANEW Products, if not more, in California, Nebraska, and throughout the United States. Plaintiffs are informed and believe and, on that basis, allege that the representations for the ANEW Products in the Avon product brochures and on the Avon.com website have been uniform throughout the class period.

124. The groups of similarly situated individuals Plaintiffs seek to represent are defined as follows.

**Nationwide Class:**

> All residents of the United States of America who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action.

**Nationwide Brochure Purchaser Subclass:**

> All residents of the United States of America who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action, through an Avon product brochure.

**Nationwide Direct Purchaser Subclass:**

All residents of the United States of America who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action, through Avon.com.

**California Class:**

All residents of the State of California who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action.

**California Brochure Purchaser Subclass:**

All residents of the State of California who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action, through an Avon product brochure.

**Nebraska Class:**

All residents of the State of Nebraska who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action.

**Nebraska Direct Purchaser Subclass:**

All residents of the State of Nebraska who purchased any ANEW Clinical or Reversalist Products during the period of October 23, 2008 through the date of final disposition of this action, through Avon.com.

125.    Excluded from the Classes and Subclasses are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.  Further excluded from the Classes and Subclasses are persons that sought and obtained from Avon a refund for the purchase price of the ANEW Clinical or Reversalist Products purchased, as reflected in Avon's sales and returns records.

126.    Plaintiffs reserve the right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Classes and Subclasses should be expanded or otherwise modified.

127.    Plaintiffs reserve the right to establish additional subclasses as appropriate.

128.    This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.

129.    <u>Numerosity</u>:  While the exact number of members of the Classes and respective Subclasses is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiffs are informed and believe that the Classes and Subclasses include thousands of members.  Therefore, the Classes and Subclasses are sufficiently numerous that joinder of all members thereof in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

130.    <u>Commonality</u>:  Common questions of law and fact exist as to the members of the Classes and Subclasses, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Classes and respective Subclasses within the meaning of Federal Rule of Civil Procedure 23(b)(3).

131.    The common questions of law and fact include, but are not limited to, the following:

> a.      whether Defendant's marketing statements for the ANEW Clinical and/or Reversalist Products were deceptive, false, or misleading;
>
> b.      whether Defendant breached an express warranty made to Plaintiffs and the Classes and Subclasses;
>
> c.      whether Defendant omitted material information relating to the efficacy of the ANEW Clinical and/or Reversalist Products;

d.      whether Defendant concealed from Plaintiffs and the members of the Classes and Subclasses that its ANEW Clinical and/or Reversalist Products do not provide the promised results;

e.      whether, by the misconduct set forth in this Consolidated Amended Complaint, Defendant has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of its ANEW Clinical and/or Reversalist Products;

f.      whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the members of the Classes and Subclasses are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

132.    Ascertainability:   Names and addresses of members of the Classes and/or Subclasses and their purchases are available from Defendant's records, or alternatively, the members of the Classes and/or Subclasses and their purchases may be ascertained based on submission by Class or Subclass members of proofs, as approved by the Court.  Notice can be provided to the members of the Classes and/or Subclasses through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under common law, California or Nebraska state law, and federal law.

133.    Typicality:  Plaintiffs' claims are typical of the claims of the other members of the Classes and Subclasses which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Classes and Subclasses have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

134.    Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Classes and Subclasses as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Classes and Subclasses because they have no interests which are adverse to the interests of the members of the Classes or Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

135.    Rule 23(b):  Additionally, this action is certifiable under the provisions of Federal Rule(s) of Civil Procedure 23(b)(2) and/or 23(b)(3) because:

    a.    The prosecution of separate actions by individual members of the Classes and Subclasses would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes and Subclasses which would establish incompatible standards of conduct for Defendant;

    b.    The prosecution of separate actions by individual members of the Classes and Subclasses would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Classes and Subclasses not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c.    Defendant has acted or refused to act on grounds generally applicable to all of the members of the Classes and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes and Subclasses as a whole and necessitating that any such relief be extended to members of the Classes and Subclasses on a mandatory, class-wide basis; or

    d.    As alleged above, common questions of law or fact predominate over any questions affecting only individual members of the Classes or Subclasses.

136.    Superiority:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

    a.    The expense and burden of individual litigation make it economically unfeasible for members of the Classes and Subclasses to seek to redress their "negative value" claims other than through the procedure of a class action;

    b.    If separate actions were brought by individual members of the Classes and Subclasses, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

    c.    Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

137.    Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## A.     Claims Brought On Behalf Of The Nationwide Class

### FIRST CAUSE OF ACTION
### (Breach of Contract)

138.    Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

139.    Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Class.

140.    Each purchase of the ANEW Products made by Plaintiffs and the other members of the Nationwide Class constitutes a separate contract formed with Defendant for the sale of goods.

141.    Defendant promised in both product brochures and on the Avon.com website that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

142.    In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiffs or the members of the Nationwide Class.

143.    Consequently, Defendant breached its contracts with Plaintiffs and the other members of the Nationwide Class.

144.    Plaintiffs and the other members of the Nationwide Class suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products in its product brochures and on the Avon.com website, and failed to receive the products they thought they were paying for.

### SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

145.    Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

146.    Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Class.

147.    Plaintiffs and each member of the Nationwide Class formed a contract with Defendant at the time that they purchased the ANEW Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant in the marketing materials for the ANEW Products, as described above, including the Avon.com website and the product brochures.  These marketing materials for the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and other members of the Nationwide Class on one hand, and Defendant on the other.

148.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the members of the Nationwide Class.  Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here.  In addition, Plaintiffs are excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

149.    Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's

support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

150.  Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the other Nationwide Class members by not providing products which perform as advertised.

151.  As a result of Defendant's breach of express warranty, Plaintiffs and the other Nationwide Class members were harmed in the amount of the purchase price they paid for the ANEW Products.

## THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

152.  Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

153.  Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Class.

154.  Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as represented and advertised.

155.  Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse

visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the advertisements and marketing material, including the Avon.com website and the product brochures. As a result, Plaintiffs and the other Nationwide Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

156. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiffs and the other Nationwide Class members purchased the ANEW Products for use as anti-aging skincare products.

157. The ANEW Products were not altered by Plaintiffs or the other Nationwide Class members. The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties. The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiffs and the other Nationwide Class members did not receive the goods as warranted.

158. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the other Nationwide Class members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised.

**B.** **Claims Brought On Behalf Of The Nationwide Brochure Purchaser Subclass**

### FOURTH CAUSE OF ACTION
**(Breach of Contract)**

159.    Plaintiffs Quintana and Trujillo ("Plaintiffs," for purposes of all claims brought on behalf of the Nationwide Brochure Purchaser Subclass) repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

160.    Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Brochure Purchaser Subclass.

161.    Each purchase of the ANEW Products made by Plaintiffs and the other members of the Nationwide Brochure Purchaser Subclass constitutes a separate contract formed with Defendant for the sale of goods.

162.    Defendant promised in its brochures that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

163.    In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiffs or the members of the Nationwide Brochure Purchaser Subclass.

164.    Consequently, Defendant breached its contracts with Plaintiffs and the other members of the Nationwide Brochure Purchaser Subclass.

165.    Plaintiffs and the other members of the Nationwide Brochure Purchaser Subclass suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products in the Avon product brochures, and failed to receive the products they thought they were paying for.

### FIFTH CAUSE OF ACTION

**(Breach of Express Warranty)**

166.    Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

167.    Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Brochure Purchaser Subclass.

168.    Plaintiffs and each member of the Nationwide Brochure Purchaser Subclass formed a contract with Defendant at the time that they purchased the ANEW Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant in the product brochures.  These statements describing and promoting the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and other members of the Nationwide Brochure Purchaser Subclass on one hand, and Defendant on the other.

169.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the members of the Nationwide Brochure Purchaser Subclass. Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here.  In addition, Plaintiffs are excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

170.    Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's

support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

171.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the other Nationwide Brochure Purchaser Subclass members by not providing products which perform as advertised.

172.     As a result of Defendant's breach of express warranty, Plaintiffs and the other Nationwide Brochure Purchaser Subclass members were harmed in the amount of the purchase price they paid for the ANEW Products.

**SIXTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

173.     Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

174.     Plaintiffs bring this cause of action individually and on behalf of the other members of the Nationwide Brochure Purchaser Subclass.

175.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

176.     Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse

visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results contained in Avon's product brochures as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the brochure description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made in the product brochures. As a result, Plaintiffs and the other Nationwide Brochure Purchaser Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

177. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiffs and the other Nationwide Brochure Purchaser Subclass members purchased the ANEW Products for use as anti-aging skincare products.

178. The ANEW Products were not altered by Plaintiffs or the other Nationwide Brochure Purchaser Subclass members. The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties. The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiffs and the other Nationwide Brochure Purchaser Subclass members did not receive the goods as warranted.

179. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the other Nationwide Brochure Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised in Avon's product brochures.

**C.**    **Claims Brought On Behalf Of The Nationwide Direct Purchaser Subclass**

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**

180.    Plaintiff Tillman ("Plaintiff," for purposes of all claims brought on behalf of the Nationwide Direct Purchaser Subclass) repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

181.    Plaintiff brings this cause of action individually and on behalf of the other members of the Nationwide Direct Purchaser Subclass.

182.    Each purchase of the ANEW Products made by Plaintiff and the other members of the Nationwide Direct Purchaser Subclass constitutes a separate contract formed with Defendant for the sale of goods.

183.    Defendant promised on its Avon.com website that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

184.    In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiff or the members of the Nationwide Direct Purchaser Subclass.

185.    Consequently, Defendant breached its contracts with Plaintiff and the other members of the Nationwide Direct Purchaser Subclass.

186.    Plaintiff and the other members of the Nationwide Direct Purchaser Subclass suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products on the Avon.com website, and failed to receive the products they thought they were paying for.

**EIGHTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

187.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

188.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nationwide Direct Purchaser Subclass.

189.     Plaintiff and each member of the Nationwide Direct Purchaser Subclass formed a contract with Defendant at the time that they purchased the ANEW Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant on the Avon.com website.  These statements describing and promoting the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and other members of the Nationwide Direct Purchaser Subclass on one hand, and Defendant on the other.

190.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the members of the Nationwide Direct Purchaser Subclass.  Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here.  In addition, Plaintiff is excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

191.     Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's

support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

192. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the other Nationwide Direct Purchaser Subclass members by not providing products which perform as advertised.

193. As a result of Defendant's breach of express warranty, Plaintiff and the other Nationwide Direct Purchaser Subclass members were harmed in the amount of the purchase price they paid for the ANEW Products.

**NINTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

194. Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

195. Plaintiff brings this cause of action individually and on behalf of the other members of the Nationwide Direct Purchaser Subclass.

196. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

197. Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse

visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results asserted on the Avon.com website, as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the Avon.com description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the Avon.com website. As a result, Plaintiff and the other Nationwide Direct Purchaser Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

198. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiff and the other Nationwide Direct Purchaser Subclass members purchased the ANEW Products for use as anti-aging skincare products.

199. The ANEW Products were not altered by Plaintiff or the other Nationwide Direct Purchaser Subclass members. The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties. The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiff and the other Nationwide Direct Purchaser Subclass members did not receive the goods as warranted.

200. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the other Nationwide Direct Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised in the Avon.com website descriptions.

## TENTH CAUSE OF ACTION
### (Violation of New York General Business Law § 349)

201. Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

202.  Plaintiff brings this cause of action individually and on behalf of the other members of the Nationwide Direct Purchaser Subclass.

203.  Each consumer's use of Avon.com (and all affiliated websites operated by Defendant, including without limitation AvonCompany.com, YourAvon.com, MeetMark.com, AvonRepresentative.com, SellAvon.com, and StartAvon.com) is governed by the Avon Products, Inc. Terms and Conditions of Use (available at http://www.youravon.com/REPSuite/terms_and_conditions.page, *last accessed* September 17, 2014) ("Website Terms and Conditions").

204.  Paragraph 18 of the Website Terms and Conditions provides the following: "This Agreement shall be governed by the laws of the State of New York, U.S.A., without regard to its conflicts of laws principles.  You agree that any dispute or claim arising out of or relating to this Agreement shall be resolved only in the courts located in the City of New York, State of New York, U.S.A. and you hereby consent and submit to the jurisdiction of such courts for the purposes of litigating any such dispute or claim."

205.  In the event that the Court determines all claims and disputes arising out of transactions occurring on or through Avon.com (or affiliated websites governed by the same Website Terms and Conditions) are subject to the law of the State of New York, Plaintiff and the other members of the Nationwide Direct Purchaser Subclass assert that the conduct alleged herein, including the misrepresentations and omissions on Avon.com detailed above, violates New York General Business Law § 349.

206.  As alleged above, Defendant misrepresented on Avon.com that its ANEW Products can, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell

shape"; "reshape the skin"; "help skin cells act younger"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein.

207. Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

208. Defendant's misrepresentations and omissions constitute an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or knowing concealment, suppression, or omission in connection with the sale or advertisement of merchandise, in violation of § 349 of New York's General Business Law, which makes deceptive acts and practices illegal.

209. Plaintiff and the other members of the Nationwide Direct Purchaser Subclass suffered an ascertainable loss directly, foreseeably, and proximately caused by Defendant's misrepresentations and/or omissions because they were induced to purchase merchandise due to the false, deceptive, and/or misleading advertising and marketing on Avon.com of the ANEW Products. Because of Defendant's misrepresentations and omissions, Plaintiff and the other members of the Nationwide Direct Purchaser Subclass did not receive the products that they thought they were paying for.

210. Plaintiff and the other members of the Nationwide Direct Purchaser Subclass each seek injunctive relief and an award of "actual damages or fifty dollars, whichever is greater," as allowable under N.Y. Gen. Bus. Law § 349(h), for each and every one of Defendant's violations of § 349 – *i.e.*, for each and every purchase of an ANEW Product. Each product sold to Plaintiff and each member of the Nationwide Direct Purchaser Subclass constitutes a separate violation of § 349.

## **ELEVENTH CAUSE OF ACTION**
### **(Violation of New York General Business Law § 350)**

211. Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

212. Plaintiff brings this cause of action individually and on behalf of the other members of the Nationwide Direct Purchaser Subclass.

213.    Each consumer's use of Avon.com (and all affiliated websites operated by Defendant, including without limitation AvonCompany.com, YourAvon.com, MeetMark.com, AvonRepresentative.com, SellAvon.com, and StartAvon.com) is governed by the Avon Products, Inc. Terms and Conditions of Use (available at http://www.youravon.com/REPSuite/terms_and_conditions.page, *last accessed* September 17, 2014) ("Website Terms and Conditions").

214.    Paragraph 18 of the Website Terms and Conditions provides the following: "This Agreement shall be governed by the laws of the State of New York, U.S.A., without regard to its conflicts of laws principles.  You agree that any dispute or claim arising out of or relating to this Agreement shall be resolved only in the courts located in the City of New York, State of New York, U.S.A. and you hereby consent and submit to the jurisdiction of such courts for the purposes of litigating any such dispute or claim."

215.    In the event that the Court determines all claims and disputes arising out of transactions occurring on or through Avon.com (or affiliated websites governed by the same Website Terms and Conditions) are subject to the law of the State of New York, Plaintiff and the other members of the Nationwide Direct Purchaser Subclass assert that the conduct alleged herein, including the misrepresentations and omissions detailed above, violates New York General Business Law § 350.

216.    As alleged above, Defendant misrepresented on Avon.com that its ANEW Products can, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "restore cell shape"; "reshape the skin"; "help skin cells act younger"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein.

217. Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

218. Defendant's misleading actions are consumer-oriented conduct and constitute false advertising in violation of § 350 of New York's General Business Law, which makes false advertising illegal.

219. Plaintiff and the other members of the Nationwide Direct Purchaser Subclass suffered injury as a result of Defendant's false advertising because they were induced to purchase merchandise due to the false, deceptive, and/or misleading advertising and marketing on Avon.com of the ANEW Products. Because of Defendant's false advertising, Plaintiff and the other members of the Nationwide Direct Purchaser Subclass did not receive the products that they thought they were paying for.

**D.     Claims Brought On Behalf Of The California Class**

**TWELFTH CAUSE OF ACTION**
**(Violation of California Consumers Legal Remedies Act,**
**California Civil Code §§ 1750 *et seq*.)**

220. Plaintiffs Quintana and Trujillo ("Plaintiffs," for purposes of all claims brought on behalf of the California Class) repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

221. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

222. The California Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.* ("CLRA"), prohibits a set of enumerated commercial practices.

223. Plaintiffs and the other members of the California Class are consumers as defined by California Civil Code § 1761(d). The ANEW Products are goods within the meaning of California Civil Code § 1761(a).

224. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs

and the other members of the California Class, which were intended to result in, and did result in, the sale of the ANEW Products:

> (5)     Representing that [the ANEW Products have]… characteristics…[and] uses…which they do not have….

> (7)     Representing that [the ANEW Products] are of a particular standard…if they are of another.

> (9)     Advertising goods…with intent not to sell them as advertised.

225.     Defendant violated the CLRA by misrepresenting and omitting material information about the ANEW Products, as discussed above.  Defendant knew, or should have known, that its representations were false and misleading, and omitted material information.

226.     In order to conceal the fact that Avon's efficacy claims promoting the ANEW Products, including that those products "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; or "reverse wrinkles" are untrue, Defendant markets the ANEW Products with phrases such as "clinical," "focused," and "target[ing] specific concerns," and other representations discussed above, in both its product brochures and its Avon.com website.

227.     On October 22, 2012, via certified mail, return receipt requested, under § 1782 of the CLRA, Plaintiff Trujillo's counsel notified Avon in writing of its violations of § 1770, and demanded that it rectify the problems associated with the conduct detailed above, which acts and practices are in violation of California Civil Code § 1770.

228.     On November 14, 2012, via certified mail, return receipt requested, under § 1782 of the CLRA, Plaintiff Quintana's counsel notified Avon in writing of its violations of § 1770,

and demanded that it rectify the problems associated with the conduct detailed above, which acts and practices are in violation of California Civil Code § 1770.

229.    Avon failed to respond to Plaintiffs' demands, and did not give notice to all affected consumers as required under § 1782.  Therefore, under § 1780(a) of the CLRA, Plaintiffs and the other members of the California Class seek actual and punitive damages.

230.    Plaintiff Trujillo filed a Declaration of Venue in accordance with California Civil Code § 1780(d).

231.    Pursuant to § 1782(d) of the CLRA, Plaintiffs seek an order enjoining the acts and practices described above, restitution of property, and any other relief that the court deems proper.

232.    Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase sales of the ANEW Products.

233.    Defendant's misrepresentations and omissions were material to Plaintiffs and the other members of the California Class.  Plaintiffs and the other members of the California Class would not have purchased and consumed the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and the other members of the California Class were damaged as a result of Defendant's material misrepresentations and omissions.

<u>**THIRTEENTH CAUSE OF ACTION**</u>
**(Violation of California Unfair Competition Law,**
**California Business & Professions Code §§ 17200 *et seq.*)**

234.    Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

235.    Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

236.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendant has engaged

in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

237. Defendant's misrepresentations and omissions of material facts in both the product brochures and on its Avon.com website, as set forth herein, constitute an unlawful practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, and the common law (including breach of contract and breach of warranty principles).

238. Defendant's misrepresentations and omissions of material facts in both the product brochures and on its Avon.com website, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code § 17200, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiffs also assert a violation of public policy by engaging in false advertising and withholding material facts from consumers. Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

239. California Business and Professions Code § 17200 also prohibits any "fraudulent business act or practice."

240. Defendant's misrepresentations and concealment of material facts in both the product brochures and on its Avon.com website, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code § 17200.

241. Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiffs and the other members of the California Class to purchase the ANEW Products. Plaintiffs and the other members of the California Class saw and justifiably relied on Defendant's misrepresentations when purchasing the ANEW Products.

242. Defendant's conduct caused and continues to cause injury to Plaintiffs and the other members of the California Class. Defendant's misrepresentations and omissions were material to Plaintiffs and the other members of the California Class. Plaintiffs and the other

members of the California Class would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiffs and the other members of the California Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

243. Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and they were material to Plaintiffs. Reliance upon the misrepresentations and omissions discussed herein may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the other California Class members' injuries.

244. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and the other members of the California Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

245. Additionally, under Business and Professions Code § 17203, Plaintiffs and the other members of the California Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its misrepresentations and omissions.

## FOURTEENTH CAUSE OF ACTION
### (Breach of Contract)

246. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

247. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

248. Each purchase of the ANEW Products made by Plaintiffs and the other members of the California Class constitutes a separate contract formed with Defendant for the sale of goods.

249. Defendant promised in both its product brochures and on its Avon.com website that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and

57

wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

250. In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiffs or the members of the California Class.

251. Consequently, Defendant breached its contracts with Plaintiffs and the other members of the California Class.

252. Plaintiffs and the other members of the California Class suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products in both product brochures and on the Avon.com website, and failed to receive the products they thought they were paying for.

**FIFTEENTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

253. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

254. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

255. Plaintiffs and each member of the California Class formed a contract with Defendant at the time that they purchased the ANEW Products. The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant in the marketing materials for the ANEW Products, as described above, including the Avon.com website

and the product brochures. These marketing materials for the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and other members of the California Class on one hand, and Defendant on the other.

256. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the members of the California Class. Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here. In addition, Plaintiffs are excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

257. Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

258. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the other California Class members by not providing products which perform as advertised.

259. As a result of Defendant's breach of express warranty, Plaintiffs and the other California Class members were harmed in the amount of the purchase price they paid for the ANEW Products.

## SIXTEENTH CAUSE OF ACTION
**(Breach of Implied Warranty of Merchantability)**

260. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

261. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

262. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

263. Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the advertisements and marketing material, including the Avon.com website and the product brochures. As a result, Plaintiffs and the other California Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

264. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiffs and the other California Class members purchased the ANEW Products for use as anti-aging skincare products.

265.    The ANEW Products were not altered by Plaintiffs or the other California Class members.  The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties.  The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiffs and the other California Class members did not receive the goods as warranted.

266.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the other California Class members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised.

**SEVENTEENTH CAUSE OF ACTION**
**(Violation of California False Advertising Law,**
**California Business & Professions Code §§ 17500 *et seq.*)**

267.    Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

268.    Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

269.    California Business and Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

270.    Defendant violated California Business and Professions Code § 17500 by, *inter alia*, (a) misleadingly advertising in both its product brochures and on its Avon.com website that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles," or provide any of the other promised age-negating results as described herein and (b) concealing material information about the true nature of the ANEW

Products, in that the ANEW Products did not, and could not, provide the benefits Avon promised to provide.

271.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and the other members of the California Class to purchase the ANEW Products. Defendant's deceptive practices were carried out in the marketing materials for the ANEW Products in order to induce Plaintiffs and the other members of the California Class to purchase the ANEW Products.

272.    Plaintiffs and the other members of the California Class would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiffs and the other members of the California Class were denied the benefit of the bargain when they decided to purchase the ANEW Products, which had no age-negating effect whatsoever. Had Plaintiffs and the other members of the California Class been aware of Defendant's false and misleading advertising tactics, they would not have purchased the ANEW Products.

273.    The content of Avon's representations concerning the ANEW Products, as alleged herein, were of a nature likely to deceive reasonable consumers.

274.    Defendant knew, or in the exercise of reasonable care, should have known, that its promotional representations were untrue or misleading and likely to deceive reasonable consumers.

275.    Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the California Class members' injuries.

276.    Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code § 17500.

277.     As a result of the foregoing, Plaintiffs and the other members of the California Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

**EIGHTEENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

278.     Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

279.     Plaintiffs bring this cause of action individually and on behalf of the other members of the California Class.

280.     By its wrongful acts and omissions with respect to promotion of the ANEW Products, in both product brochures and on the Avon.com website, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiffs and the other members of the California Class, who did not receive the goods to which they were entitled for the payments made to Defendant, and thus, Plaintiffs and the other members of the California Class were unjustly deprived of money.

281.     It would be inequitable and unconscionable for Defendant to retain the benefit and other compensation it obtained as a result of its deceptive, misleading, and unlawful conduct alleged herein.

282.     Plaintiffs and the other members of the California Class seek restitution from Defendant, and seek an order of this Court disgorging all compensation obtained by Defendant as a result of its wrongful conduct.

**E.**     **Claims Brought On Behalf Of The California Brochure Purchaser Subclass**

**NINETEENTH CAUSE OF ACTION**
**(Violation of California Consumers Legal Remedies Act,**
**California Civil Code §§ 1750 _et seq._)**

283.     Plaintiffs Quintana and Trujillo ("Plaintiffs," for purposes of all claims brought on behalf of the California Brochure Purchaser Subclass) repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

284.     Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

285.     As alleged above, the CLRA, California Civil Code §§ 1750, *et seq.*, prohibits a set of enumerated commercial practices.

286.     Plaintiffs and the other members of the California Brochure Purchaser Subclass are consumers as defined by California Civil Code § 1761(d).  The ANEW Products are goods within the meaning of California Civil Code § 1761(a).

287.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the other members of the California Brochure Purchaser Subclass, which were intended to result in, and did result in, the sale of the ANEW Products:

> (5)     Representing that [the ANEW Products have]… characteristics…[and] uses…which they do not have….

> (7)     Representing that [the ANEW Products] are of a particular standard…if they are of another.

> (9)     Advertising goods…with intent not to sell them as advertised.

288.     Defendant violated the CLRA by misrepresenting and omitting material information about the ANEW Products, as discussed above.  Defendant knew, or should have known, that its representations about the ANEW Products in product brochures were false and misleading, and omitted material information.

289.     In order to conceal the fact that Avon's efficacy claims promoting the ANEW Products, including that those products "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; or

"reverse wrinkles" are untrue, Defendant markets the ANEW Products with phrases such as "clinical," "focused," and "target[ing] specific concerns," and other representations discussed above, in its product brochures.

290.    On October 22, 2012, via certified mail, return receipt requested, under § 1782 of the CLRA, Plaintiff Trujillo's counsel notified Avon in writing of its violations of § 1770, and demanded that it rectify the problems associated with the conduct detailed above, which acts and practices are in violation of California Civil Code § 1770.

291.    On November 14, 2012, via certified mail, return receipt requested, under § 1782 of the CLRA, Plaintiff Quintana's counsel notified Avon in writing of its violations of § 1770, and demanded that it rectify the problems associated with the conduct detailed above, which acts and practices are in violation of California Civil Code § 1770.

292.    Avon failed to respond to Plaintiffs' demands, and did not give notice to all affected consumers as required under § 1782. Therefore, under § 1780(a) of the CLRA, Plaintiffs and the other members of the California Brochure Purchaser Subclass seek actual and punitive damages.

293.    Plaintiff Trujillo filed a Declaration of Venue in accordance with California Civil Code § 1780(d).

294.    Pursuant to § 1782(d) of the CLRA, Plaintiffs seek an order enjoining the acts and practices described above, restitution of property, and any other relief that the court deems proper.

295.    Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase sales of the ANEW Products.

296.    Defendant's misrepresentations and omissions concerning the ANEW Products in its product brochures were material to Plaintiffs and the other members of the California Brochure Purchaser Subclass. Plaintiffs and the other members of the California Brochure Purchaser Subclass would not have purchased and consumed the ANEW Products had it not been

for Defendant's misrepresentations and concealment of material facts. Plaintiffs and the other members of the California Brochure Purchaser Subclass were damaged as a result of Defendant's material misrepresentations and omissions.

**TWENTIETH CAUSE OF ACTION**
**(Violation of California Unfair Competition Law,**
**California Business & Professions Code §§ 17200 *et seq.*)**

297. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

298. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

299. California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described above, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

300. Defendant's misrepresentations and omissions of material facts in its product brochures, as set forth herein, constitute an unlawful practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, and the common law (including breach of contract and breach of warranty principles).

301. Defendant's misrepresentations and omissions of material facts in its product brochures, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code § 17200, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiffs also assert a violation of public policy by engaging in false advertising and withholding material facts from consumers. Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

302. California Business and Professions Code § 17200 also prohibits any "fraudulent business act or practice."

303.     Defendant's misrepresentations and concealment of material facts in its product brochures, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code § 17200.

304.     Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiffs and the other members of the California Brochure Purchaser Subclass to purchase the ANEW Products.  Plaintiffs and the other members of the California Brochure Purchaser Subclass saw and justifiably relied on Defendant's misrepresentations when purchasing the ANEW Products.

305.     Defendant's conduct caused and continues to cause injury to Plaintiffs and the other members of the California Brochure Purchaser Subclass.  Defendant's misrepresentations and omissions were material to Plaintiffs and the other members of the California Brochure Purchaser Subclass.  Plaintiffs and the other members of the California Brochure Purchaser Subclass would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and the other members of the California Brochure Purchaser Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

306.     Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and they were material to Plaintiffs.  Reliance upon the misrepresentations and omissions discussed herein may therefore be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the other California Brochure Purchaser Subclass members' injuries.

307.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and the other members of the California Brochure Purchaser Subclass to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

308.     Additionally, under Business and Professions Code § 17203, Plaintiffs and the other members of the California Brochure Purchaser Subclass seek an order requiring Defendant

to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its misrepresentations and omissions.

## TWENTY-FIRST CAUSE OF ACTION
### (Breach of Contract)

309.     Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

310.     Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

311.     Each purchase of the ANEW Products made by Plaintiff and the other members of the California Brochure Purchaser Subclass constitutes a separate contract formed with Defendant for the sale of goods.

312.     Defendant promised in its brochures that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

313.     In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiffs or the members of the California Brochure Purchaser Subclass.

314.     Consequently, Defendant breached its contracts with Plaintiffs and the other members of the California Brochure Purchaser Subclass.

315.     Plaintiffs and the other members of the California Brochure Purchaser Subclass suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products in the Avon product brochures, and failed to receive the products they thought they were paying for.

## TWENTY-SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

316.     Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

317.     Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

318.     Plaintiffs and each member of the California Brochure Purchaser Subclass formed a contract with Defendant at the time that they purchased the ANEW Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant in the product brochures.  These statements describing and promoting the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and other members of the California Brochure Purchaser Subclass on one hand, and Defendant on the other.

319.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the members of the California Brochure Purchaser Subclass. Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here.  In addition, Plaintiffs are excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

320.     Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

321.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the other California Brochure Purchaser Subclass members by not providing products which perform as advertised.

322.     As a result of Defendant's breach of express warranty, Plaintiffs and the other California Brochure Purchaser Subclass members were harmed in the amount of the purchase price they paid for the ANEW Products.

**TWENTY-THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

323.     Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

324.     Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

325.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

326.     Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines

and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results contained in Avon's product brochures as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the brochure description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made in the product brochures. As a result, Plaintiffs and the other California Brochure Purchaser Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

327. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiffs and the other California Brochure Purchaser Subclass members purchased the ANEW Products for use as anti-aging skincare products.

328. The ANEW Products were not altered by Plaintiffs or the other California Brochure Purchaser Subclass members. The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties. The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiffs and the other California Brochure Purchaser Subclass members did not receive the goods as warranted.

329. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the other California Brochure Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised in Avon's product brochures.

## TWENTY-FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

330. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

331. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

332. By its wrongful acts and omissions with respect to promotion of the ANEW Products in its product brochures, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiffs and the other members of the California Brochure Purchaser Subclass, who did not receive the goods to which they were entitled for the payments made to Defendant, and thus, Plaintiffs and the other members of the California Brochure Purchaser Subclass were unjustly deprived of money.

333. It would be inequitable and unconscionable for Defendant to retain the benefit and other compensation it obtained as a result of its deceptive, misleading, and unlawful conduct alleged herein.

334. Plaintiffs and the other members of the California Brochure Purchaser Subclass seek restitution from Defendant, and seek an order of this Court disgorging all compensation obtained by Defendant as a result of its wrongful conduct.

### TWENTY-FIFTH CAUSE OF ACTION
**(Violation of California False Advertising Law,**
**California Business & Professions Code §§ 17500 *et seq.*)**

335. Plaintiffs repeat the allegations contained in paragraphs 1-137 as if fully set forth herein.

336. Plaintiffs bring this cause of action individually and on behalf of the other members of the California Brochure Purchaser Subclass.

337. California Business and Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

338. Defendant violated California Business and Professions Code § 17500 by, *inter alia*, (a) misleadingly advertising in its product brochures that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen

skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles," or provide any of the other promised age-negating results as described herein and (b) concealing material information about the true nature of the ANEW Products, in that the ANEW Products did not, and could not, provide the benefits Avon promised to provide.

339. Defendant's deceptive practices were specifically designed to induce Plaintiffs and the other members of the California Brochure Purchaser Subclass to purchase the ANEW Products. Defendant's deceptive practices were carried out in the marketing materials for the ANEW Products in order to induce Plaintiffs and the other members of the California Brochure Purchaser Subclass to purchase the ANEW Products.

340. Plaintiffs and the other members of the California Brochure Purchaser Subclass would not have purchased and used the ANEW Products had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiffs and the other members of the California Brochure Purchaser Subclass were denied the benefit of the bargain when they decided to purchase the ANEW Products, which had no age-negating effect whatsoever. Had Plaintiffs and the other members of the California Brochure Purchaser Subclass been aware of Defendant's false and misleading advertising tactics, they would not have purchased the ANEW Products.

341. The content of Avon's representations concerning the ANEW Products, as alleged herein, were of a nature likely to deceive reasonable consumers.

342. Defendant knew, or in the exercise of reasonable care, should have known, that its promotional representations were untrue or misleading and likely to deceive reasonable consumers.

343. Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions

may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs' and the California Brochure Purchaser Subclass members' injuries.

344.    Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code § 17500.

345.    As a result of the foregoing, Plaintiffs and the other members of the California Brochure Purchaser Subclass have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

**F.    Claims Brought On Behalf Of The Nebraska Class**

**TWENTY-SIXTH CAUSE OF ACTION**
**(Violation of Nebraska Consumer Protection Act,**
**Nebraska Revised Statutes §§ 59-1601 *et seq.*)**

346.    Plaintiff Tillman ("Plaintiff," for purposes of all claims brought on behalf of the Nebraska Class) repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

347.    Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Class.

348.    The Nebraska Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Neb. Rev. Stat. § 59-1602.

349.    "Trade" and "commerce" are defined by the Nebraska CPA as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Neb. Rev. Stat. § 59-1601(2). "Assets" is defined as "any property, tangible or intangible, real, personal, or mixed, and wherever situated, and any other thing of value." Neb. Rev. Stat. § 59-1601(3).

350.    Defendant misrepresented that the ANEW Products can, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support

layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles"; or provide any of the other promised age-negating results as described herein, in both product brochures and on the Avon.com website.

351.    Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

352.    Defendant's misrepresentations and omissions constitute an unfair method of competition and an unfair or deceptive act or practice in the conduct of trade or commerce, in violation of Neb. Rev. Stat. § 59-1602.

353.    Defendant's unfair and deceptive commercial practices affect the public interest. By falsely, misleadingly, unfairly, and/or deceptively marketing the ANEW Products, as alleged herein, Defendant did much more than simply breach its contracts with Plaintiff alone. Truth in advertising is universally recognized as a public concern, and Defendant systematically undermined the public's interest in maintaining that principle.

354.    Plaintiff and the other members of the Nebraska Class suffered an ascertainable loss directly, foreseeably and proximately caused by Avon's misrepresentations and/or omissions because they were induced to purchase due to the advertising, marketing, and other promotion of ANEW Products. Because of Defendant's misrepresentations and omissions, Plaintiff and the other members of the Nebraska Class did not receive the products they thought they were paying for.

## TWENTY-SEVENTH CAUSE OF ACTION
### (Breach of Contract)

355.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

356.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Class.

357.     Each purchase of the ANEW Products made by Plaintiff and the other members of the Nebraska Class constitutes a separate contract formed with Defendant for the sale of goods.

358.     Defendant promised in both its product brochures and on its Avon.com website that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

359.     In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiffs or the members of the Nebraska Class.

360.     Consequently, Defendant breached its contracts with Plaintiffs and the other members of the Nebraska Class.

361.     Plaintiffs and the other members of the Nebraska Class suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products in both product brochures and on the Avon.com website, and failed to receive the products they thought they were paying for.

## TWENTY-EIGHTH CAUSE OF ACTION
### (Breach of Express Warranty)

362.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

363.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Class.

364. Plaintiff and each member of the Nebraska Class formed a contract with Defendant at the time that they purchased the ANEW Products. The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant in the marketing materials for the ANEW Products, as described above, including the Avon.com website and the product brochures. These marketing materials for the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and other members of the Nebraska Class on one hand, and Defendant on the other.

365. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the members of the Nebraska Class. Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here. In addition, Plaintiff is excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

366. Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide

any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

367.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the other Nebraska Class members by not providing products which perform as advertised.

368.     As a result of Defendant's breach of express warranty, Plaintiff and the other Nebraska Class members were harmed in the amount of the purchase price they paid for the ANEW Products.

**TWENTY-NINTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

369.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

370.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Class.

371.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

372.     Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the description; and (c) the goods were unfit for their intended and

ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the advertisements and marketing material, including the Avon.com website and the product brochures. As a result, Plaintiff and the other Nebraska Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

373.    In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiff and the other Nebraska Class members purchased the ANEW Products for use as anti-aging skincare products.

374.    The ANEW Products were not altered by Plaintiff or the other Nebraska Class members. The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties. The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiff and the other Nebraska Class members did not receive the goods as warranted.

375.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the other Nebraska Class members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised.

## THIRTIETH CAUSE OF ACTION
### (Unjust Enrichment)

376.    Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

377.    Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Class.

378.    By its wrongful acts and omissions with respect to promotion of the ANEW Products, in both product brochures and on the Avon.com website, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiff

and the other members of the Nebraska Class, who did not receive the goods to which they were entitled for the payments made to Defendant, and thus, Plaintiff and the other members of the Nebraska Class were unjustly deprived of money.

379.    It would be inequitable and unconscionable for Defendant to retain the benefit and other compensation it obtained as a result of its deceptive, misleading, and unlawful conduct alleged herein.

380.    Plaintiff and the other members of the Nebraska Class seek restitution from Defendant, and seek an order of this Court disgorging all compensation obtained by Defendant as a result of its wrongful conduct.

**G.    Claims Brought On Behalf Of The Nebraska Direct Purchaser Subclass**

**THIRTY-FIRST CAUSE OF ACTION**
**(Violation of Nebraska Consumer Protection Act,**
**Nebraska Revised Statutes §§ 59-1601 *et seq.*)**

381.    Plaintiff Tara Tillman ("Plaintiff," for purposes of all claims brought on behalf of the Nebraska Direct Purchaser Subclass) repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

382.    Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Direct Purchaser Subclass.

383.    The Nebraska Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Neb. Rev. Stat. § 59-1602.

384.    "Trade" and "commerce" are defined by the Nebraska CPA as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."  Neb. Rev. Stat. § 59-1601(2).  "Assets" is defined as "any property, tangible or intangible, real, personal, or mixed, and wherever situated, and any other thing of value."  Neb. Rev. Stat. § 59-1601(3).

385.    Defendant misrepresented on Avon.com that the ANEW Products can, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen

skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles"; or provide any of the other promised age-negating results as described herein, on the Avon.com website.

386. Defendant also failed to disclose material facts regarding the purported supporting scientific references and clinical tests as described herein.

387. Defendant's misrepresentations and omissions constitute an unfair method of competition and an unfair or deceptive act or practice in the conduct of trade or commerce, in violation of Neb. Rev. Stat. § 59-1602.

388. Defendant's unfair and deceptive commercial practices affect the public interest. By falsely, misleadingly, unfairly, and/or deceptively marketing the ANEW Products, as alleged herein, Defendant did much more than simply breach its contracts with Plaintiff alone. Truth in advertising is universally recognized as a public concern, and Defendant systematically undermined the public's interest in maintaining that principle.

389. Plaintiff and the other members of the Nebraska Direct Purchaser Subclass suffered an ascertainable loss directly, foreseeably and proximately caused by Avon's misrepresentations and/or omissions on Avon.com because they were induced to purchase due to the advertising, marketing, and other promotion of ANEW Products. Because of Defendant's misrepresentations and omissions, Plaintiff and the other members of the Nebraska Direct Purchaser Subclass did not receive the products they thought they were paying for.

## THIRTY-SECOND CAUSE OF ACTION
### (Breach of Contract)

390. Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

391. Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Direct Purchaser Subclass.

392. Each purchase of the ANEW Products made by Plaintiff and the other members of the Nebraska Direct Purchaser Subclass constitutes a separate contract formed with Defendant for the sale of goods.

393. Defendant promised on its Avon.com website that, among other things, the ANEW Products would "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; and "reverse wrinkles," among other promised age-negating results as described herein.

394. In fact, the ANEW Products cannot deliver any of those promised results, and did not deliver such results to Plaintiff or the members of the Nebraska Direct Purchaser Subclass.

395. Consequently, Defendant breached its contracts with Plaintiff and the other members of the Nebraska Direct Purchaser Subclass.

396. Plaintiff and the other members of the Nebraska Direct Purchaser Subclass suffered injury as a result of Avon's breaches, because they were induced to purchase the ANEW Products by Avon's advertising, marketing, and promotion of the ANEW Products on the Avon.com website, and failed to receive the products they thought they were paying for.

### THIRTY-THIRD CAUSE OF ACTION
**(Breach of Express Warranty)**

397. Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

398. Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Direct Purchaser Subclass.

399. Plaintiff and each member of the Nebraska Direct Purchaser Subclass formed a contract with Defendant at the time that they purchased the ANEW Products. The terms of that contract include the efficacy promises and affirmations of fact that the ANEW Products would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help

strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, made by Defendant on the Avon.com website. These statements describing and promoting the ANEW Products constitute an express warranty, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and other members of the Nebraska Direct Purchaser Subclass on one hand, and Defendant on the other.

400. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the members of the Nebraska Direct Purchaser Subclass. Defendant has been on notice of the breaches of warranty alleged herein since the FDA's October 2012 warning letter as well as other litigation concerning the same ANEW Products at issue here. In addition, Plaintiff is excused of any actual notice requirements because of Defendant's fraudulent concealment of the facts alleged herein, and because Defendant has been notified by other members of the Classes and Subclasses of the basis of the claims alleged herein.

401. Despite express warranties that the ANEW Products alone would, among other things, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen the skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results as described herein, the ANEW Products do not provide such benefits.

402. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the other Nebraska Direct Purchaser Subclass members by not providing products which perform as advertised.

403.     As a result of Defendant's breach of express warranty, Plaintiff and the other Nebraska Direct Purchaser Subclass members were harmed in the amount of the purchase price they paid for the ANEW Products.

## THIRTY-FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

404.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

405.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Direct Purchaser Subclass.

406.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the ANEW Products were fit for their intended purpose in that they would function as advertised.

407.     Defendant breached the warranty implied in the contract for the sale of the ANEW Products in that (a) the ANEW Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "regenerate hydroproteins to help visibly minimize creasing"; "help strengthen skin's support layers"; "improve fine & deep wrinkles up to 50%"; "deactivate collagen blocking"; "rebuild collagen to help plump out lines and wrinkles"; "fortify damaged tissue with new collagen"; "tighten the connections between skin's layers"; "reactivate skin's repair process to recreate fresh skin & help dramatically reverse visible wrinkles"; "reverse wrinkles" or provide any of the other promised age-negating results asserted on the Avon.com website, as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description; (b) the goods were not of fair average quality within the Avon.com description; and (c) the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes.  Furthermore, the ANEW Products did not conform to the promises or affirmations of fact made on the Avon.com website.  As a result, Plaintiff and the other Nebraska Direct Purchaser Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

408.     In reliance upon Defendant's skill and judgment and the implied warranties of fitness for their ordinary purpose, Plaintiff and the other Nebraska Direct Purchaser Subclass members purchased the ANEW Products for use as anti-aging skincare products.

409.     The ANEW Products were not altered by Plaintiff or the other Nebraska Direct Purchaser Subclass members.  The ANEW Products were defective when they left the exclusive control of Defendant and Defendant knew the ANEW Products would be purchased and used without additional testing for their chemical properties.  The ANEW Products do not perform as advertised and were unfit for their intended purpose and Plaintiff and the other Nebraska Direct Purchaser Subclass members did not receive the goods as warranted.

410.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the other Nebraska Direct Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the ANEW Products if the true facts regarding their efficacy had been known and (b) the ANEW Products did not have the quality, efficacy, or value as promised in the Avon.com website descriptions.

## THIRTY-FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

411.     Plaintiff repeats the allegations contained in paragraphs 1-137 as if fully set forth herein.

412.     Plaintiff brings this cause of action individually and on behalf of the other members of the Nebraska Direct Purchaser Subclass.

413.     By its wrongful acts and omissions with respect to promotion of the ANEW Products on the Avon.com website, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiffs and the other members of the Nebraska Direct Purchaser Subclass, who did not receive the goods to which they were entitled for the payments made to Defendant, and thus, Plaintiffs and the other members of the Nebraska Direct Purchaser Subclass were unjustly deprived of money.

414.    It would be inequitable and unconscionable for Defendant to retain the benefit and other compensation it obtained as a result of its deceptive, misleading, and unlawful conduct alleged herein.

415.    Plaintiffs and the other members of the Nebraska Direct Purchaser Subclass seek restitution from Defendant, and seek an order of this Court disgorging all compensation obtained by Defendant as a result of its wrongful conduct.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

416.    Certifying the Classes and Subclasses, including the Nationwide Class, Nationwide Brochure Purchaser Subclass, and Nationwide Direct Purchaser Subclass; the California Class and the California Brochure Purchaser Subclass; and the Nebraska Class and the Nebraska Direct Purchaser Subclass, as requested herein, certifying Plaintiffs as the representatives of the Classes and/or Subclasses respectively, and appointing Plaintiffs' counsel as counsel for the Classes and Subclasses;

417.    Ordering that Defendant is financially responsible for notifying all members of the Classes and/or Subclasses of the alleged misrepresentations and omissions discussed herein;

418.    Awarding Plaintiffs and the members of the Classes and/or Subclasses compensatory damages in an amount according to proof at trial;

419.    Awarding restitution and disgorgement of Defendant's revenues and/or profits to Plaintiffs and the other members of the Classes and/or Subclasses;

420.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them

restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

421.    Ordering Defendant to engage in corrective advertising;

422.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry to judgment in this action;

423.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

424.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.


Dated: November 10, 2014              GRANT & EISENHOFER P.A.


                                      By:    /s/ John C. Kairis_____
                                             Robert G. Eisler
                                             John C. Kairis
                                             Kyle J. McGee
                                             123 Justison Street
                                             Wilmington, Delaware  19801
                                             Telephone:  (302) 622-7000
                                             Facsimile:  (302) 622-7100

                                             James E. Cecchi
                                             Caroline F. Bartlett
                                             Zachary S. Bower
                                             CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY
                                             & AGNELLO, P.C.
                                             5 Becker Farm Road
                                             Roseland, New Jersey 07068
                                             Telephone: (973) 994-1700

Roland Tellis
Mark Pifko
Natasha Mehta
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

Jay W. Eisenhofer
GRANT & EISENHOFFER P.A.
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500

Adam J. Levitt
GRANT & EISENHOFFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Telephone: (312) 214-0000

Lionel Z. Glancy
Marc L. Godino
Casey E. Sadler
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Interim Co-Lead Counsel for Plaintiffs and
the Putative Classes and Subclasses*

Antonio Vozzolo
Javier Hidalgo
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel:  (212) 983-9330

Mark Gardy
Meagan Farmer
GARDY & NOTIS
501 Fifth Avenue, Suite 1408
New York, New York 10017
Tel:  (212) 905-0509

*Additional Non-Lead Counsel for
Plaintiffs and the Putative Classes and
Subclasses*