UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                       :

IN RE AVON ANTI-AGING SKINCARE     :          13-CV-150 (JPO)
CREAMS AND PRODUCTS MARKETING   :
AND SALES PRACTICES LITIGATION     :      OPINION AND ORDER
                                         :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

Plaintiffs in these consolidated cases filed the operative class-action complaint on

November 10, 2014.  (Dkt. No. 124.)  They allege that the defendant Avon Products, Inc.,

marketed some of its ANEW brand products with false and misleading information.  The

Plaintiffs have moved for class certification.  (Dkt. No. 135.)  For the reasons that follow, the

motion is denied.

## I.      Background

Avon, a New York corporation, is a major cosmetics company.  (Dkt. No. 124 ¶¶ 16, 18.)

At issue are five skin care products in Avon's ANEW brand: Clinical Advanced Wrinkle

Corrector, Reversalist Night Renewal Cream, Reversalist Renewal Serum, Reversalist Day

Renewal Cream, and Reversalist Illuminating Eye System.  (Dkt. No. 136 at 1, 5 n.5.)  These

products are designed to reduce the effects of aging on the skin.  Avon sells them primarily

through independent sales representatives ("ISRs")—the so-called "Avon Lady,"—and through

its website, avon.com.  (Dkt. No. 153 ¶¶ 5, 12.)  The ISRs, numbering six million in 2013, are

not employees of Avon.  (*Id.* at 5; Dkt. No. 164 at 6-7.)  Avon provides ISRs with materials and

sells the ISRs a rotating set of marketing brochures, but the ISRs decide "which products to sell,

how to sell them," and the products' price.  (Dkt. No. 153 ¶ 8.)  When ISRs make a sale, they

place the order with Avon, and Avon records only the ISR rather than information about the

ISR's customers.  (*Id.* at ¶ 13.)

The named plaintiffs are Lorena Trujillo, Monique Quintana, and Tara Tillman.  Trujillo,

a citizen of California, purchased the Reversalist Night Renewal Cream from 2011 to 2013.

(Dkt. No. 124 ¶¶ 94-95.)  Quintana, also a citizen of California, purchased the Clinical Advanced

Wrinkle Corrector, Reversalist Night Renewal Cream, and Reversalist Renewal Serum from

2010 to 2012.  (*Id.* at ¶¶ 99-100.)  Tillman, a citizen of Nebraska, purchased the Reversalist

Night Renewal Cream and Reversalist Renewal Serum, both from avon.com and for her personal

use while an ISR from November 2009 through July 2010.  (*Id.* at ¶¶ 105-16; Dkt. No. 136 at

10.)

Plaintiffs seek certification of seven classes and subclasses of purchasers from October

23, 2008, to the present: (1) all residents of the United States who purchased one of the class

products; (2) a nationwide subclass of purchasers through an ISR; (3) a nationwide subclass of

purchasers through avon.com; (4) all purchasers from California; (5) a subclass of California

residents who purchased through an ISR; (6) all purchasers from Nebraska; and (7) a subclass of

Nebraska residents who purchased through avon.com.  (Dkt. No. 124 ¶ 124; Dkt. No. 136 at 12.)

They assert claims for breach of contract, deceptive acts and practices, false advertising, unfair

competition and other breaches of New York, California, and Nebraska state law.  (Dkt. No. 136

at 11-12.)

All of these claims are based on the same theory.  Plaintiffs allege that Avon sold the

class products by making specific false or misleading claims about their scientific anti-aging

properties.  They focus on three core statements: that the products "reverse wrinkles," "repair

wrinkles," and "rebuild collagen." (Dkt. No. 168 at 1.)  As Plaintiffs argue, the class products

"do not, and cannot, perform as promised—for *any* consumer." (Dkt. No. 136 at 1.)

Plaintiffs here, along with others, filed complaints in this district and in the Central

District of California.  On April 23, 2013, the parties stipulated to the consolidation of those

actions into this case. (Dkt. No. 32.)  The Plaintiffs filed a consolidated class-action complaint

on June 10, 2013, and an amended class-action complaint on November 10, 2014.  (Dkt. Nos. 41,

124.)  After class certification discovery, the Plaintiffs filed this motion for class certification on

December 2, 2014.  (Dkt. No. 135.)

## II.     Discussion

According to Rule 23(a) of the Federal Rules of Civil Procedure, there are four

prerequisites to class certification: "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class." *Johnson v.*

*Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  If an action satisfies those

prerequisites, it may be certified if it also satisfies one of the three parts of Rule 23(b).

Rule 23(b)(3) permits certification of a class if the plaintiff establishes "(1)

predominance—'that the questions of law or fact common to class members predominate over

any questions affecting only individual members'; and (2) superiority—'that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.*

(quoting Fed. R. Civ. P. 23(b)(3)).  The Second Circuit has also recognized the "implied

requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d

Cir.), *clarified and reh'g denied*, 483 F.3d 70 (2d Cir. 2006) (mem.).  That requirement ensures

that "the class is 'sufficiently definite so that it is administratively feasible for the court to

determine whether a particular individual is a member.'"  *Brecher v. Republic of Argentina*, __

F.3d __, 2015 WL 5438797, at *2 (2d Cir. Sept. 16, 2015) (quoting 7A Wright & Miller, Federal

Practice & Procedure § 1760 (3d ed. 1998)).

In evaluating whether Rule 23's requirements are met, the Court conducts a "rigorous

analysis," probing whether the plaintiffs have "*in fact*" proven each of the requirements.

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013) (quoting *Wal-Mart Inc. v. Dukes*,

131 S. Ct. 2541, 2551-52 (2011)).  The Court must look "behind the pleadings," even if such an

inquiry "overlap[s] with the merits of the plaintiff[s'] underlying claim," and determine if the

plaintiffs have demonstrated the Rule 23 requirements by a preponderance of the evidence.  *Id.*;

*see Pa. Pub. Sch. Emp's. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2014).

That is not to say, however, that the plaintiff must "show that the common questions 'will be

answered, on the merits, in favor of the class.'"  *Johnson*, 780 F.3d at 138 (quoting *Amgen Inc. v.*

*Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)).

### A.      Brochure Purchasers

Plaintiffs seek certification of nationwide and California classes and subclasses of those

who purchased the class products through Avon ISRs.  They claim breach of contract, violation

of California's unfair competition and consumer protection acts, and similar causes of action.

Each of these claims, Plaintiffs argue, has as an element a false, misleading, or deceptive

representation.  (Dkt. No. 136 at 28-41 (reviewing the elements of each claim)).

Avon raises serious questions about whether Plaintiffs have satisfied Rule 23(a).  The

Court need not address those arguments, however, because Plaintiffs have not satisfied the

preponderance or ascertainability requirements.  *See Weiner v. Snapple Beverage Corp.*, No. 07

Civ. 8742, 2010 WL 3119452, at *5 (S.D.N.Y. Aug. 5, 2010).

### 1.     Predominance

"The predominance requirement of Rule 23(b)(3) tests whether the proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Myers v. Hertz Corp.*, 624 F.3d

537, 547 (2d Cir. 2010) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997))

(internal quotation marks omitted).  This requirement is "more demanding than Rule 23(a),"

including that Rule's commonality requirement.  *Johnson*, 780 F.3d at 138 (quoting *Comcast*,

133 S. Ct. at 1432).  In the Rule 23(b)(3) analysis, the Court must consider "(1) the elements of

the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to

prove those elements on a class-wide basis or whether individualized proof will be needed to

establish each class member's entitlement to relief."  *Id.* (quoting McLaughlin on Class Actions

§ 5:23) (internal quotation marks omitted).  Additionally, the Court must consider whether "the

common issues can profitably be tried on a classwide basis, or whether they will be

overwhelmed by individual issues."  *Id*.; *see Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d

376, 386 (2d Cir. 2015) ("The predominance requirement is satisfied if resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof." (quoting *In re U.S. Foodservice Inc. Pricing Litig.*,

729 F.3d 108, 118 (2d Cir. 2013)).  The purpose of the predominance inquiry is to "ensure[ ] that

the class will be certified only when it would achieve economies of time, effort, and expense,

and promote uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results."  *Myers*, 624 F.3d at 547

(alteration in original) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).

For their assortment of claims, Plaintiffs argue that one question—the "Falsity Question"—predominates. That question is "whether Avon's representations that its Class Products are able to 'reverse wrinkles' and 'repair wrinkles,' 'activate skin's repair process,' and 'rebuild collagen' are false, unfair, deceptive, and/or misleading." (Dkt. No. 136 at 2.) Plaintiffs argue that some of Avon's advertising makes a set of scientific claims. The issue, they suggest, is whether the class products "**biologically** and **chemically** have an effect on collagen in the dermis such that wrinkles are reversed and repaired." (Dkt. No. 168 at 6.)

Accordingly, Plaintiffs do not challenge "any [Avon statements] that arguably would call for subjective, individual inquiries (such as whether a product improved a consumer's 'appearance')." (*Id.*) They concede that a consumer may not be able to distinguish whether an Avon product reverses wrinkles in the dermis or the appearance of wrinkles, but argue that consumer experiences are irrelevant to their claims. (*Id.* at 6-7 and n.21.) Their concern is whether Dorian Gray ages biologically, regardless of whether he looks forever young. In support of their argument, Plaintiffs rely primarily on expert testimony by Dr. Norman Weiner. (Dkt. No. 139.)

Plaintiffs' argument encounters two fatal obstacles. First, Plaintiffs have not proven by a preponderance of the evidence that the Falsity Question in the brochure context is amenable to generalized proof. As Avon notes, it introduced new brochures every two weeks. The parties introduced voluminous evidence of the contents of these brochures. (Dkt. No. 138 Exs. A-E, Dkt. No. 149 Ex. 49.) Having reviewed the record, the Court finds that many of the brochures do not contain the sort of scientific claims analyzed by Dr. Weiner. For example, Campaign 2 in

2013 for the ANEW Clinical Advanced Wrinkle Corrector claimed to "improve[] deep wrinkles up to 50%," a claim that arguably speaks to the biology of wrinkles rather than their appearance, and a claim analyzed by Dr. Weiner.  But Campaign 23 for the same product in the same year claimed only to "instantly help[] plump out the look of wrinkles."  This is not a claim about biology apart from appearance, and it was not analyzed by Dr. Weiner.  Plaintiffs argue that the advertising claims implicating the Falsity Question were made "repeatedly and consistently," "with immaterial variations."  (Dkt. No. 168 at 1-2 & n.6.)  On the Court's review, the record does not support the notion that the variations in Avon's brochures are immaterial.

Second, Plaintiffs have not demonstrated that the brochures were regularly given to Avon customers who purchased through ISRs.  ISRs had to purchase brochures from Avon, and they were under no obligation to use them in selling to customers, much less regularly.  For any individual customer, the ISR might have made a scientific claim about the product's effect on the dermis, or simply an uncontested claim about the product's effect on the customer's appearance—though Avon does not rely on any oral representations made by ISRs.  (Dkt. No. 168 at 2 n.5.)  The ISR might have used an Avon brochure or the language discussed by Dr. Weiner, or not.  Answering the Falsity Question, then, would not decide the claims of many purchasers.[1]

This is not a case in which the misrepresentation at issue was made to all consumers—for example, through a uniform product label.  *See, e.g.*, *Ault v. J.M. Smucker Co.*, __ F.R.D. __, 2015 WL 4692454, at *1-2 (S.D.N.Y. Aug. 6, 2015) (considering "All Natural" label on oils); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 403-04 (S.D.N.Y. 2015) (considering efficacy claims

---

[1] Plaintiffs' description of the elements of their own claims makes evident that a consumer must be exposed to the allegedly false or misleading statement in order to bring a claim.  (Dkt. No. 136 at 29-41.)

on packaging of seed and fertilizer product); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 564

(S.D.N.Y. 2014) (considering olive oil's "100% Pure" label); *Weiner*, 2010 WL 3119452, at *2

(considering Snapple's "All Natural" label).  Rather, this is a case in which there is "material

variation in the representations made" and "the kinds or degrees of reliance by the persons to

whom they were addressed." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)

(Sotomayor, J.) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966 amendment)).

Accordingly, class treatment of the brochure claims is inappropriate.

### 2.      Ascertainability

Even if the Falsity Question predominated over individual issues with respect to brochure

purchasers, the same considerations lead the Court to conclude that the class is not ascertainable.

The "touchstone of ascertainability is whether the class is sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member."

*Brecher*, 2015 WL 5438797, at *2 (internal quotation marks and citation omitted).  This inquiry

requires more than the use of objective criteria "when those criteria, taken together, do not

establish the definite boundaries of a readily identifiable class."  *Id.; see In re Initial Pub.*

*Offering Sec. Litig.*, 471 F.3d at 44-45.  Though class members need not be ascertained prior to

class certification, a class is not ascertainable "when identifying its members would [] require a

mini-hearing on the merits of each case."  *Weiner*, 2010 WL 3119452, at *13 (internal quotation

marks and citation omitted).

Such individuated mini-hearings would be required in this case.  Avon does not keep

records of individual customers who purchased through ISRs, but they do have records of ISRs

who ordered the class products and the times at which they were ordered.  (Dkt. No. 136 at 27-

28.)  Plaintiffs propose to identify class and subclass membership by: (1) providing a claim form

8

and receipt, (2) providing a claim form and UPC code from the product packaging, or (3)

providing a claim form and a sworn affidavit including "objective indicia of reliability," like date

of purchase and the ISR through which the purchase was made. (Dkt. No. 140 at ¶¶ 14-25.)

Plaintiffs' proposal is inadequate. "Plaintiffs offer no basis to find that putative class

members will have retained a receipt . . . or any other concrete documentation of their purchases

of" the class products. *Weiner*, 2010 WL 3119452, at \*13. Additionally, "putative class

members are unlikely to remember accurately every . . . purchase during the class period, much

less whether" they received the allegedly false statements prior to purchase. *Id.* Plaintiffs' third

proposal is merely an "invit[ation] . . . to speculate, or worse," *id.*, especially since the class

products and some of Avon's other product lines have similar names. The proposed solution—

comparing affidavits to Avon's records of ISR orders—does not adequately ameliorate these

concerns. There remains a substantial likelihood that, given the enormous number of ISRs and

sales of class products, affidavits that are untrue or incorrect may still be verified by Avon's

records. In this sense, the verification process may be like attempting to verify a particular

number in the phone book using the area code 212 and the first name "Courtney"—the risk of

false positives is great.

Moreover, even if the proposed verification method effectively identified consumers who

purchased the class products, Avon's records do not show whether putative class members saw

the allegedly false statements. This is not a case where the false statements were present in all

cases and crucial to the purchase decision. *Cf. Ebin*, 297 F.R.D. at 567 (describing similar

barriers to ascertainability as "formidable" where products were all described as "100% pure

olive oil").  Here, the false statements may not have been made to the individual consumer. [2]

Determining whether an affiant is in fact a class member would require an individualized mini-

trial.  *See Brecher*, 2015 WL 5438797, at *2 (explaining that class of "those wearing blue shirts"

may be objective, but is insufficiently definite).

For these reasons, class certification for the nationwide and California brochure purchaser

subclasses is denied.  Similarly, since the brochure purchaser subclasses make up the vast

majority of the classes of all purchasers and raise the same causes of action, certification of those

classes is denied.

### B.        Internet Purchasers

Plaintiffs also seek certification of nationwide and Nebraska subclasses who purchased

through Avon's website, avon.com.  The nationwide internet subclass asserts claims for breach

of contract and violations of New York General Business Law §§ 349-50.  The Nebraska

subclass asserts claims for breach of contract, unjust enrichment, violation of the Nebraska

Consumer Protection Act, and similar claims.

As an initial matter, the Terms and Conditions of avon.com preclude the claims of the

Nebraska subclass.  Those terms contain a choice-of-law clause in favor of "the laws of the State

of New York."  (Dkt. No. 124 at ¶¶ 203-04; Dkt. No. 155 at 15-16.)  To the extent that Plaintiffs

might renew their claims—for example, the Nebraska consumer protection claim— by arguing

that they fall outside this clause, that argument is erroneous.  Nebraska follows the Restatement

(Second) of Conflict of Laws.  *DCS Sanitation Mgmt. v. Castillo*, 435 F.3d 892, 895 (8th Cir.

---

[2] In passing, Plaintiffs suggest that the name of the "Rerversalist" line of products is itself
misleading.  (Dkt. No. 136 at 7; Dkt. No. 168 at 2.)  To the extent that this product name can be
taken as an efficacy claim, it lacks a referent.  Consumers can reasonably understand
"Reversalist" as a product that reverses wrinkles or reverses the appearance of wrinkles.  So
while some consumers may have been exposed to allegedly false scientific statements through
the product name, others were not.

2006).  Section 187 of the Restatement applies a choice-of-law clause even to issues "which the

parties could not have resolved by an explicit provision in their agreement," unless the chosen

state has no substantial relationship to the transaction or application of the chosen state's law

would violate the public policy of a state with a materially greater interest in the issue.

Restatement (Second) of Conflict of Laws § 187(2); *see* William J. Woodward, Jr., *Legal*

*Uncertainty and Aberrant Contracts*, 89 Chi.-Kent. L. Rev. 197, 206-07 (2014) (discussing the

application of § 187 to consumer protection laws).  Neither exception has been shown to apply

here.  Accordingly, claims by Nebraska purchasers on avon.com, including those of the proposed

class representative Tillman, are governed by New York law.  Certification of the Nebraska

subclass is denied.

Plaintiff's primary remaining claims arise under New York General Business Law

§§ 349-50.  Section 349 the New York General Business Laws "declares unlawful '[d]eceptive

acts or practices in the conduct of any business.'"  *City of New York v. Smokes-Spirits.com, Inc.*,

911 N.E.2d 834, 837 (N.Y. 2009) (quoting N.Y. Gen. Bus. Law § 349(a)).  To show a violation

of that section, a plaintiff must prove that "a defendant has engaged in (1) consumer-oriented

conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the

allegedly deceptive act or practice."  *Id.* at 838.  Section 350 declares unlawful "[f]alse

advertising in the conduct of any business, trade, or commerce in the furnishing of any service."

N.Y. Gen. Bus. Law § 350.  "The standard for recovery under [this section], while specific to

false advertising, is otherwise identical to section 349."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774

N.E.2d 1190, 1195 n.1 (N.Y. 2002).  Whether consumer-oriented conduct was materially

misleading is an objective question, requiring courts to consider whether the conduct is "likely to

mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*

*Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)

These claims fail Rule 23(b)(3)'s predominance requirement.  Plaintiffs argue that the

predominating question is whether Avon's statements on avon.com were materially misleading.

Such a question may be amenable to generalized proof, since Avon's internet statements were

more consistent than its brochure statements, but the question is overwhelmed by individualized

issues.

In particular, "a plaintiff seeking compensatory damages" under these sections "must

show that the defendant engaged in a material deceptive act or practiced that *caused* actual,

although not necessarily pecuniary, harm.  *Oscar v. BMW of N. Am., LLC*, No. 09-Civ-11, 2012

WL 2359964, at *3 (S.D.N.Y. 2012) (Engelmayer, J.) (quoting *Oswego*, 647 N.E.2d at 745).

Though Plaintiffs need not show justifiable reliance or pecuniary harm, they must show actual

harm as to each class member caused by the defendant's conduct.  *Id.*; *see also Small v. Lorillard*

*Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999).

This causation issue will require individual inquiries that cannot be established by

common proof.  Plaintiffs have not shown—and likely could not show on a class-wide basis—

that the class products failed to improve the appearance of consumers' skin.  Indeed, though

Plaintiffs sometimes refer to Avon's products as "worthless," they also describe consumer views

as "irrelevant" to their claims and do not defend their expert's report on those terms.  (Dkt. No.

136 at 42; Dkt. No. 168 at 6-7 & n.21.)  Even if some consumers were harmed by Avon's

allegedly false biological claims, others may have been satisfied by the products' aesthetic

effects.  For these consumers, the products may not have worked through the promised

mechanism, but they worked nonetheless.

Just as beauty is in the eye of the beholder, purchasing decisions like this one are "inherently individualized." *Oscar*, 2012 WL 2359964, at \*5.  Courts in this district routinely reject claims that a materially misleading act or practice caused class-wide harm when many customers "who actually wanted" the product notwithstanding the misleading act "were not injured." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 74 (S.D.N.Y. 2013) (citing *Brissenden v. Time Warner Cable of New York City*, 885 N.Y.S.2d 879, 882-86 (N.Y. Sup. Ct. 2009)); *see Ebin*, 297 F.R.D. at 568-69 (distinguishing cases involving "individuals included in the class who did not suffer injury" from cases in which all class members were harmed); *see also Oscar*, 2012 WL 2359964, at \*5-7 (collecting cases).  Such is the case here.  It is impossible to decide, as a general matter, whether Avon's claims of biological effectiveness caused actual harm to the entire class of purchasers.

Finally, Plaintiffs bring a claim for classwide breach of contract.  "Under New York Law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411. Plaintiffs are not precise as to their exact theory of breach.  (Dkt. No. 124 at ¶¶ 159-65; Dkt. No. 136 at 15-16.)  The claim, however, is for breach of contract, not for violation of a warranty or fraudulent inducement.  And Plaintiffs have presented no evidence as to the details of the contract or the provision breached.

This problem is more than cosmetic.  The Complaint references the existence of avon.com's Terms and Conditions, implying the existence of an elaborated purchase agreement, but Plaintiffs provide no evidence that the website advertising was part of that agreement or that a single agreement was common to the class.  (Dkt. No. 124 at ¶¶ 203-04.)  *See, e.g., Scott v. Bell*

*Atl. Corp.*, 282 A.D.2d 180, 185 (N.Y. App. Div. 1st Dep't 2001) ("[I]t would be highly

unlikely, upon a reading of defendants' representations along with the Service Agreement, that a

reasonably prudent consumer would rely on the representations in the face of the agreement's

conspicuous, unequivocal disclamations concerning any warranties . . . ."), *modified on other*

*grounds by Goshen v. Mutual Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002); *cf. Fink v. Time*

*Warner*, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011) (dismissing breach of contract claim for

failure to allege the "essential terms [of the contract] in nonconclusory language").  Plaintiffs

have therefore failed to carry their burden of showing the existence of a common contract or

question whose interpretation is appropriate for class certification.

## C.     Other Issues

Three wrinkles remain.  First, Plaintiffs seek certification of class seeking injunctive and

declaratory relief under Rule 23(b)(2).  Plaintiffs lack standing to bring this claim.  Each Plaintiff

states that, if she had been aware of the alleged truth about Avon's products, she would not have

bought class products.  (Dkt. No. 124 at ¶¶ 98, 103, 117.)  Plaintiffs are unlikely to buy the class

products again, and do not allege otherwise in their complaint.  Accordingly, they lack standing

to seek a forward-looking injunction.  *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 255-

56 (S.D.N.Y. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see Elkind*

*v. Revlon Consumer Prods. Corp.*, No. 14–CV–2484, 2015 WL 2344134, at *3 & n.2 (E.D.N.Y.

May 14, 2015) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983)); *Vaccariello*, 295

F.R.D. at 68; *see also McNair v. Synapse Grp.*, 672 F.3d 213, 223-26 (3d Cir. 2012).

Some district courts, primarily in California, have allowed such claims to go forward

because the contrary rule would preclude injunctive relief in false advertising cases.  *See, e.g.,*

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *see also Belifiore v.*

*Proctor & Gamble Co.*, __ F. Supp. 3d __, 2015 WL 1402313, at *2-3 (E.D.N.Y. 2015) (Weinstein, J.).  Article III does not permit this sort of public policy exception, and in any event, the Lanham Act and state consumer protection statutes allow state governments and competitors to seek similar injunctive relief.  *See, e.g.*, 15 U.S.C. § 1116; N.Y. Gen. Bus. Law § 349(b). Certification of a Rule 23(b)(2) class is denied.

Second, Plaintiffs seek certification of an issue class under Rule 23(c)(4) to try the Falsity Question.  This rule "authorizes the district court in appropriate cases to isolate the common issues under [Rule 23(c)(4)] and proceed with class treatment of these particular issues." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (internal quotation marks and citation omitted); *see In re Motor Fuel Temp. Sales Practices Litig.,* 292 F.R.D. 652, 664-65 (D. Kan. 2013) (collecting cases).  In their cursory request for certification of an issue class, Plaintiffs describe the contours of the issue to be decided only by referencing the Falsity Question.  (Dkt. No. 136 at 48-49.)  They have not shown that the issue class would satisfy the other requirements of Rule 23, nor would certification be appropriate for the reasons explained above.  *See Nassau County*, 461 F.3d at 226.  Certification of a Rule 23(c)(4) class is denied.

Third, Plaintiffs move to strike four declarations filed with Avon's opposition to the motion.  The Court denies the motion to certify the class without reference to the contested information from the affidavits.  Accordingly, the motion to strike is denied as moot.

### III.    Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED and

Plaintiffs' motion to strike is DENIED as moot.

The Clerk is directed to close the docket entries at 135 and 170.


SO ORDERED.


Dated:  September 30, 2015
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge